**Elford SCHMIDT, Appellant,**

v.

**Val HEBEISEN, et al., Respondents,**

**No. C9–83–1615.**

Court of Appeals of Minnesota.

April 10, 1984.

Michael A. Fahey, Robert A. Nicklaus, Chaska, for appellant.

Michael R. Savre, Glencoe, for respondents.

Considered and decided by POPOVICH, C.J., and WOZNIAK and LANSING, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This is an appeal challenging the probate court's appointment of Gerald Rekow as guardian of the person and estate of Mathilda Schmidt. Appellant alleges the court had insufficient evidence to conclude that Rekow was the most suitable and best qualified because Rekow was not present at the time of his appointment, and because an independent person was not really nec-

essary since a family member was best suited and available.

We affirm.

## FACTS

Appellant Elford Schmidt petitioned Carver County Probate Court seeking the appointment of a general guardian for the person and estate of his mother, Mathilda Schmidt. She has five living children and one deceased daughter, Lorena Herrmann, who is survived by eight children, three of whom are respondents. Elford Schmidt's petition proposed that his sister, Dorothy Herrmann, be appointed guardian. There is no dispute as to the need for a guardian. The mother's estate consists of over $200,-000, the majority of the assets consisting of Contracts for Deed.

Respondents filed affidavits and testified opposing the appointment of Dorothy Herrmann as general guardian. They allege that while Dorothy Herrmann has informally managed the proposed ward's estate for the past several years, she has converted large sums of money, and shared it among her brothers and sisters.

Respondents further allege that Mathilda Schmidt's estate should be subject to an inventory and accounting and that a neutral third party should be appointed to serve as Schmidt's guardian. They further allege that it would be a conflict of interest to appoint Dorothy Herrmann as guardian and require her to investigate her prior dealings.

Prior to the guardianship hearing, an in-chambers conference was held with counsel present. It was reported as follows:

During said in-chambers meeting, Judge Menke informed both counsel that he had read all the pleadings and records on file and that, in a situation such as this, he might be inclined to appoint an independent third-party as guardian for the ward. Judge Menke informed both counsel that he was familiar with an individual named Gerald Rekow, a trust officer associated with the First National Bank of Chaska. He inquired of both Mr. Nicklaus and Mr. Savre whether their clients would have a problem with the appointment of Mr. Rekow if he was willing to serve as guardian and if the Court subsequently found it necessary to appoint him.

Judge Menke then telephoned the First National Bank of Chaska and spoke personally with Gerald Rekow. He informed Mr. Rekow of the situation and inquired as to whether or not Mr. Rekow would be available and willing to serve as guardian, if the Court should choose to appoint him. Mr. Rekow indicated to Judge Menke that he would be willing to serve as guardian, if appointed, whereupon the telephone conversation was concluded and all those present proceeded to the courtroom.

Petitioner testified that the proposed guardian, Dorothy Herrmann, was qualified to act as guardian because she had informally handled Mathilda Schmidt's business affairs for many years and would be willing to accept the guardianship, if appointed.

Respondent Roxanne Rauschendorfer testified in opposition to the proposed appointment of Dorothy Herrmann because she believed it was not in the best interest of Mathilda Schmidt. Upon examination by the court, she testified that money may have been going to Mathilda Schmidt's sons and daughters and there had been an inadequate accounting of her estate. She further testified that she had seen cash disbursements that her deceased mother had received from the proposed ward's estate.

The court stated that it detected some family animosity, and for purposes of keeping this animosity to a minimum, it intended to appoint a disinterested third party as guardian. The court explained that it did not want any of the family animosity to affect the proposed ward because it could potentially aggravate the ward's medical and emotional state.

The court appointed Rekow. The court stated Mr. Rekow had experience in han-

dling estates and could keep peace in the family. The appointment of Rekow was acceptable to the respondents. Appellant's objections, raised following the appointment, was that an independent person was not really necessary because a family member was available, and that Rekow was not present at the hearing.

## ISSUE

Does the Probate Court, in consideration of the proposed ward's best interests, have the discretionary authority to appoint a disinterested third party as guardian without his being present, absent a formal objection as to his willingness or qualifications?

## ANALYSIS

■ Probate courts have original jurisdiction over guardianship proceedings. Minn. Const. art. 6, § 11. Under Minnesota law,

the Court shall make a finding that the person to be appointed as guardian or conservator is the most suitable and best qualified person among those who have indicated to the court that they are available and willing to discharge the trust before making appointment.

Minn.Stat. § 525.551 (1982). The Minnesota Supreme Court has long held that the appointment of a guardian is a matter peculiarly for and within the discretion of the appointing court. *In Re Guardianship of Dahmen,* 192 Minn. 407, 256 N.W. 891 (1934).

■ The probate court has broad powers in appointing a guardian and assuring that the ward's interests are protected:

Nothing contained in this section shall diminish the power of the court to appoint a guardian to serve or protect the interest of any person under disability in any proceeding therein.

Minn.Stat. § 525.54(6) (1982). *See generally* Minn.Stat. §§ 525.544, 525.59, and 525.-6175 (1982). The court will not interfere with the exercise of this discretion except in the case of a clear abuse. *In Re Guardianship of Stanger,* 299 Minn. 213, 217

N.W.2d 754 (1974); *In Re Guardianship of Dahmen,* 192 Minn. 407, 256 N.W. 891 (1934). The rule which emerges is that:

probate courts possess superior and general jurisdiction, and have implied power to do whatever is reasonably necessary to carryout powers expressly conferred.

*Leslie v. Minneapolis Soc'y of Fine Arts,* 259 N.W.2d 898, 903 (Minn.1977).

■ Courts generally select someone with family ties or the nominees of such persons when appointing a guardian. However, that requirement is not mandatory and the court will disregard the application of a family member if their interest and those of the ward would conflict. "The best interest of the ward should be the decisive factor in making any choice on his behalf." *In Re Guardianship of Schober,* 303 Minn. 226, 230, 226 N.W.2d 895, 898 (1975). As enunciated by the Minnesota Supreme Court:

Where, as here, the members of the family are divided into hostile camps it may be doubtful that a selection from either faction can well be made. We can think of no one better fitted to make such selection than the probate court.

*In re Guardianship of Strom,* 205 Minn. 399, 405, 286 N.W. 245, 249 (1939).

■ The trial court had two choices from which to make a selection—Dorothy Herrmann, whom the court had a reasonable basis to believe may have misappropriated funds belonging to the ward, or Rekow, a disinterested outsider with previous experience serving as a guardian. Since the ward's best interest is the court's paramount concern, and since appointing Dorothy Herrmann as guardian might be adverse to the ward's best interest because of alleged past misappropriation of funds and because of the animosity among family members which such appointment would generate, the court found that Rekow was the most suitable and best qualified person to act as guardian.

Appellant contends that the court could not appoint Rekow unless he was physically present at the guardianship hearing.

However, Minn.Stat. § 525.551(5) requires only that the person appointed indicate to the court that they are available and willing to discharge the trust, which is precisely the information Rekow conveyed to the court during the prehearing conference. Actual testimony as to the fitness, qualifications and availability need not be taken where the court already possesses knowledge of such matters unless a party formally objects on such grounds.

## DECISION

The Probate Court possesses broad discretionary authority for appointment of guardians. "Kinship, while a factor, should not be conclusive in making an appointment." Minn.Stat. § 525.44 (1982). It should not appoint one who has, or may have, an interest adverse to that of the ward. Here, it is clear that the court is not bound to select a family member where to do so would not appear to be in the ward's best interest.

Affirmed.