**In re CONSERVATORSHIP OF David L. EDWARDS, Sr., Conservatee.**

**No. C4–85–2028.**

Court of Appeals of Minnesota.

July 1, 1986.

Dwight J. Leatham, Minneapolis, for appellant David L. Edwards, Jr.

Jay McNabb, Roseville, for respondent Orpah Keaton.

Ernest E. Cutting, St. Paul, Conservator, pro se.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

David Edwards, Jr. appeals from an order appointing a conservator for his father, David Edwards, Sr. He also appeals from an order denying his subsequent petition for suspension of the appointment and for

restoration of his father to capacity. We affirm.

## FACTS

In early February of 1985, Orpah Edwards visited her 92 year old father, David Edwards, Sr. at his Arkansas farm. Orpah brought her father back to her home in St. Paul, Minnesota. She was concerned that he had no heat and that he was unable to cook for himself. She and other members of the family were also concerned about the assets of David, Sr. His financial affairs were being handled by David, Jr., who had a power of attorney. He apparently had sold some of his father's assets but would not, or could not, provide an accounting of the funds he received.

Orpah and her sister, Naomi Edwards, petitioned for a special guardianship of the person of David, Sr. After a hearing the court appointed Orpah and Naomi special guardians of the person of David, Sr.

Meanwhile, Orpah and Naomi had filed a petition requesting that they be appointed general guardians of both the person and estate of David, Sr. The petition alleged that the proposed ward was mentally and physically incapable of handling both personal and business matters.

This petition and the order for hearing and notice of rights were personally served upon David, Sr. on April 23, 1985, by Charlotte O'Connell, a court-appointed visitor. O'Connell read and explained some of the petition to him.

In a report O'Connell stated she was sure he "couldn't have fully understood" the nature, purpose and effect of the proceedings, and that he wasn't sure whether he wanted to attend the hearing. However, he stated he did not wish to be represented by an attorney. O'Connell concluded that:

> Mr. Edwards was very tired and somewhat confused the day I visited him. He thought he was still in Arkansas. Mr. Edwards didn't want to talk to me and wouldn't let me read the whole petition to him. He didn't seem to really comprehend the purpose of my visit.

She recommended that a guardian be appointed for David, Sr., but did not recommend a specific person.

A hearing on the general guardianship was held on May 7, 1985. David, Sr., the proposed ward, did not attend the hearing. A physician's statement, signed by Dr. George Haikel, was entered to excuse David, Sr. from attending the hearing. The report cites "confusing disorientation due to senility" as behavioral evidence to support the appointment of a guardian.

No hearing date is specified on the form. The statement is dated March 27, two days before the *special* guardianship hearing was held. It was not filed until May 8, 1985.

The court denied a continuance, requested by David, Jr.'s attorney, who had been retained only a day before the hearing. As a result, the only evidence taken was the testimony of Orpah and David, Jr.

After the hearing, the court amended the petition from a guardianship proceeding to a conservatorship proceeding. The court appointed Ernest Cutting, an attorney, as general conservator of the person and estate of David, Sr.

David, Jr. petitioned the court on May 22, 1985, to restore his father to capacity to suspend the appointment of the conservator. David, Jr. argued that the medical report was made to excuse his father's attendance at the March 29 special guardianship hearing, and not the May 7 hearing. He also argued that a more complete hearing would show alternatives to conservatorship less restrictive of the conservatee's civil rights.

A more extensive hearing was held on the petition for restoration on September 30, 1985. Testimony was taken from several family members, some of whom supported the conservatorship and others who were opposed to it. A medical report by Dr. Pastor Colon was prepared at David, Jr.'s request and introduced at the restoration hearing. The report contains Dr. Colon's notes and conclusions based upon two

weeks of observation and testing of David, Sr. at Fairview Hospital. It reflects extremely negatively on the question of David, Sr.'s mental capacity. Dr. Colon concluded:

> Mr. Edwards could not live alone unless he were to have help in several areas of his life. These would include financial, legal, medical and nutritional. It is our opinion that if Mr. Edwards were to live alone he would need continuous help in all the four areas listed above, and everything would need to remain status quo. Should an emergency arise, and should there be no one to help Mr. Edwards with an emergency, we feel very strongly that Mr. Edwards would have much difficulty responding to said emergency.

The trial court denied the request to restore capacity, reasoning that Dr. Colon's conclusions were undisputed. The court also denied the request to replace the conservator because the testimony indicated a great deal of dispute between the children. The court found that Cutting acted properly in all conservatorship matters, but that he had been thwarted in his efforts by lack of cooperation by the children.

### ISSUES

I. Did the probate court have jurisdiction to decide this matter?

II. Was the proposed ward required to be present at the May 7 general guardianship hearing?

III. Did the probate court's failure to require the proposed ward to be present and refusal to grant a continuance violate the proposed ward's right to due process?

IV. Does the evidence support the finding of incapacity?

V. Are there less restrictive alternatives to a conservatorship in this case?

### ANALYSIS

#### I.

Appellant argues that the court lacked personal jurisdiction because David, Sr. is domiciled in Arkansas. State law formerly required the proposed ward or conservatee be a resident of the county or, if a non-resident, have property located in the county. Minn.Stat. § 525.54 (1978). In 1980 the legislature deleted the portion of the statute that required residency. Minn.Laws 1980, c. 493, § 2. Appellant contends that even though the legislature dispensed with residency under the statute, due process requires the court to limit jurisdiction to persons domiciled in Minnesota.

The Minnesota Supreme Court ruled that a probate court has jurisdiction to decide a petition for a general guardianship of a minor domiciled in another state but who was living in Minnesota in *In re Campbell's Guardianship*, 216 Minn. 113, 11 N.W.2d 786 (1943) and again in *In re Pratt*, 219 Minn. 414, 18 N.W.2d 147 (1945). Jurisdiction is based on the state's power to protect all persons within its borders:

> The jurisdiction of the state extends to all persons within its territorial limits, regardless of the place of their domicile. From earliest times, infants and other persons lacking the physical and mental capacity to protect themselves or their property have been accorded special protection. \* \* \* The state possesses this protective power as an attribute of sovereignty and exercises it in the manner provided by statute. \* \* \* The duty has its foundation in the reciprocal obligations of allegiance and protection and extends to all persons within the state, including aliens and strangers, who, while they are present here, are under obligations of temporary, local allegiance and are entitled to the state's protection.

*Id.* 219 Minn. at 422, 18 N.W.2d at 152. *See In re Guardianship of Kowalski*, 382 N.W.2d 861, 866 (Minn.Ct.App.1986), *pet. for review denied* (Minn. Apr. 18, 1986) (state interest is protection of ward's well-being by the state acting as *parens patriae* ).

The residency requirement in the statute is not relevant since it related to venue, not jurisdiction. *See In re Guardianship of Kowalke*, 232 Minn. 297, 46 N.W.2d 275 (1950). In addition, the supreme court lim-

ited the *Campbell* and *Pratt* cases to appointment of a temporary guardian. *See id.*

■ We think the probate court did have personal jurisdiction over David, Sr., however. The limitation in *Kowalke* was dictum since the minor there was domiciled in Minnesota. *See id.* In addition, the opinion in *Campbell* specifically referred to a general guardianship. *See Campbell*, 216 Minn. at 114, 11 N.W.2d at 87.

■ Appellant also argues that the court did not have personal jurisdiction over David, Sr. because he was "tricked" into coming to Minnesota by Orpah so that she could gain control of his assets by becoming his guardian. Several letters appear in the file in which some of David, Sr.'s children express the view that he was brought to St. Paul against his will. The trial court refused to admit these letters into evidence because they were not filed with the clerk of court. We decline to consider this argument because the only evidence of "trickery" is contained in letters which were not in evidence.

## II.

■ Minnesota requires that a proposed ward be present at the guardianship hearing unless he specifically waives his right to appear in person or he is unable to attend because of a medical condition, as evidenced by a written statement from a licensed physician. Minn.Stat. § 525.551, subd. 1 (1984).

Since David, Sr. did not waive his right to attend the hearing, the question is whether the physician's statement was adequate to excuse David, Sr. from the hearing. There is some ambiguity about whether the physician's statement was prepared for the special or the general guardianship hearing since no hearing date was specified. However, we find the statement was sufficient to excuse David, Sr. from the May 7 hearing. The statement could have been used for both hearings.

## III.

Appellant claims that David, Sr. was not afforded due process because he was not present at the hearing, he was not represented by counsel, and David, Jr.'s attorney, who opposed the appointment, was not granted a continuance so that he could prepare his opposition.

Due process is a fairness doctrine which requires that a person have notice and an opportunity to be heard. Appellant does not contest adequacy of the notice, thus the question is whether the proposed ward had a real opportunity to oppose the guardianship.

■ The procedures afforded in this case were far from ideal. Important rights were at stake, including the right to contract, the right to establish a place to live, and the right to manage one's own property. It is unfortunate that appellant couldn't present evidence at that hearing.

However, that fact is not significant enough to violate David, Sr.'s right to procedural due process. His absence from the hearing was excused because of his condition. Although he was confused about the nature of guardianship proceedings, he stated he did not wish to have an attorney. Traditionally attorneys are not appointed for proposed wards.

Were it not for the admission of Dr. Colon's report at the restoration proceeding, however, the result may have differed. This is the type of evidence that should have been presented at the general guardianship hearing when David, Sr.'s capacity was initially determined. Nevertheless, that report contains clear and convincing evidence that David, Sr. is in need of a guardian. *See* Minn.Stat. § 525.551, subd. 3. In light of that report, which was made at David, Jr.'s request, we believe he had an adequate opportunity to contest the guardianship.

## IV.

Appellant argues the evidence is insufficient to support the finding of incapacity. We disagree. The starting point is the

presumption that the proposed ward has capacity. Minn.Stat. § 525.551, subd. 3. The presumption may be overcome if the court determines there is clear and convincing evidence that the person is incapacitated. *Id.*

"Incapacitated" means:

any adult person who is impaired to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, and who has demonstrated deficits in behavior which evidence his inability to meet his needs for medical care, nutrition, clothing, shelter, or safety.

Minn.Stat. § 525.54, subd. 2 (1984).

Guardianship or conservatorship of the *estate* of that person may be made involuntarily if the court finds that:

(1) the person is unable to manage his property and affairs effectively because he is an incapacitated person, and (2) he has property which will be dissipated unless proper management is provided, or that funds are needed for the support, care and welfare of the person or those entitled to be supported by him and (3) a guardian or conservator is necessary to adequately protect his estate or financial affairs.

Minn.Stat. § 525.54, subd. 3 (1984). Under this subdivision "incapacitated" has a slightly different definition:

"Incapacitated person" means, in the case of guardianship or conservatorship of the estate of an adult, any adult person who is impaired to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his estate or financial affairs, and who has demonstrated deficits in behavior which evidence his inability to manage his estate, or who is unable to manage his estate or financial affairs effectively by reason of detention by a foreign power or disappearance.

*Id.*

■ Viewed alone, the testimony of the two family members elicited at the general guardianship hearing may have been insufficient to show by clear and convincing evidence the statutory definitions of incapacity. Viewed together with Dr. Colon's report, though, sufficient evidence of incapacity exists.

### V.

The court is required to limit supervisory authority over the ward or conservatee using the alternative least restrictive of the person's civil rights. Minn.Stat. § 525.56, subd. 3(6).

Appellant makes several suggestions for less restrictive alternatives. He argues that David, Sr. could remain living with one of the children. Appellant argues that this family member could render an accounting to the court or to the other children, or that several of the children could have their names on their father's accounts, guarding against abuses. Apparently appellant seeks to avoid involvement of Cutting, a non-family member, in his father's affairs.

■ The probate court's appointment of a third party under these circumstances was a proper exercise of discretion. According to Dr. Colon's report, David, Sr. needs full-time care. The children cannot agree upon who should care for their aged father. Thus, it is appropriate that a third party be charged with that responsibility. *In re Guardianship of Strom,* 205 Minn. 399, 405, 286 N.W. 245, 249 (1939); *Schmidt v. Hebeisen,* 347 N.W.2d 62, 64 (Minn.Ct.App.1984).

### DECISION

The probate court had personal jurisdiction over the proposed ward under the state's power to protect all persons within its borders. The physician's statement was sufficient to excuse the proposed ward's presence at the general guardianship hearing. Due process was not violated where the trial court proceeded with a general guardianship hearing when the only contestant was unprepared, where the opponent was able to present evidence of capacity at a later hearing on restoration to capacity. Clear and convincing evidence existed to

support the trial court's finding of incapacity. The trial court did not abuse its discretion in appointing a disinterested third party as conservator.

Affirmed.