In re GUARDIANSHIP Of Jean
A. WELLS, Ward.

No. A06–1500.

Court of Appeals of Minnesota.

June 26, 2007.

 

Daniel Oberdorfer, Chad M. Roggeman, Leonard, Street & Deinard, P.A., Minneapolis, MN, for appellant Nancy Frey.

Philip J. Young, Nancy M. Kiskis, Moss & Barnett, Minneapolis, MN, for respondent Diane L. Vandermolen.

Richard C. Ilkka, Stillwater, MN, for respondent Jean A. Wells.

Tamara J. Gerten, Gerten & Van Valkenburg, P.A., St. Paul, MN, for respondent Frank Sutherland.

Considered and decided by STONEBURNER, Presiding Judge; DIETZEN, Judge; and WORKE, Judge.

## OPINION

DIETZEN, Judge.

Appellant Nancy J. Frey challenges the district court's denial of her petition for appointment as her mother's guardian and its order appointing a third-party guardian. We affirm.

## FACTS

In early 2005, Wallace and Jean Wells made plans for their estate and health care. As part of that process, Jean Wells executed, among other things, a health care directive naming one of her daughters, Nancy Frey, as her health care agent and her other daughter, Diane Vandermolen, as the alternate. The directive granted the health care agent and "any person named as successor or alternative health care agent, whether or not then acting as [Wells's] principal health care agent" the authority to access information pertaining to her medical treatment. Frey lives in Hugo, Minnesota, and Vandermolen lives in New Jersey.

Jean Wells currently suffers from dementia as a result of Alzheimer's disease. After Wallace Wells's death in August 2005, Jean Wells was admitted to the

memory-care unit of a long-term care facility in Stillwater, near Frey's home in Hugo. In September 2005, Frey filed a petition seeking to be appointed guardian for her mother. A hearing on Frey's petition was scheduled for November 2005. Prior to the scheduled hearing, Vandermolen filed objections to Frey's petition and sought to be appointed as Wells's guardian. In the alternative, Vandermolen sought shared guardianship with Frey or the appointment of an independent guardian. The hearing was then continued to February 2006. Before the hearing, an expert appointed by the court met with Wells and determined that she lacked capacity to voice an opinion on who should be appointed.

At the hearing, the only issue was the appointment of a guardian. Wells was represented by a court-appointed attorney, but not a guardian ad litem. The health care directive was admitted, and a long-time friend of the family testified that Frey and Vandermolen's parents had looked to Frey to take care of their affairs. Vandermolen acknowledged that Frey was qualified to serve as a guardian for their mother, but expressed concerns that Frey had not shared information about their mother's treatment and had excluded Vandermolen from participation in their mother's health care. Citing the conflict between Frey and Vandermolen, Wells's court-appointed attorney recommended that an unrelated third-party, Frank Sutherland, be appointed as guardian.

In March 2006, the district court denied Frey's petition and appointed Frank Sutherland/Sutherland Fiduciary, Inc. as guardian. The district court found that the health care directive contemplated that

Vandermolen should have access to her mother's health care information and records and that Frey had "willfully and intentionally" obstructed Vandermolen's efforts to participate in health care decisions and obtain information about her mother's care. The district court found that animosity between the sisters "is long-standing and is not likely to dissipate in the indefinite future" and that the conflict "is not in the best interests of [Wells] and has the potential to cause [Wells] aggravation and anxiety should it escalate."

Frey then brought a motion for amended findings or new trial, which was denied on all issues relevant to this appeal.[1] This appeal followed.

## ISSUES

1. When a ward has a health care directive naming a health care agent, what showing is necessary under the Uniform Guardianship and Protective Proceedings Act, Minn.Stat. § 524.5–309 (2006), to appoint a third-party guardian?

2. Did the district court err in concluding that it was not in the ward's best interests to appoint the health care agent as guardian?

## ANALYSIS

### I.

■ Frey argues that the district court erred in its application of Minn.Stat. § 524.5–309 (2006) and its denial of her petition for appointment as her mother's guardian. The appointment of a guardian is generally within the discretion of the district court. *In re Guardianship of Kowalski*, 478 N.W.2d 790, 792 (Minn.App. 1991), *review denied* (Minn. Feb. 10, 1992).

1. In its order denying Frey's motion for amended findings or a new trial, the district court granted a hearing on the third-party's qualifications as guardian. Thus, the district court has retained jurisdiction over the issue of the third party's qualifications, and, therefore, we do not reach that issue.

A reviewing court will not reverse an appointment absent a clear abuse of discretion. *Id.* We review questions of statutory interpretation de novo. *In re Conservatorship of Foster,* 547 N.W.2d 81, 84–85 (Minn.1996).

The Uniform Guardianship and Protective Proceedings Act (Guardianship Act) provides that when appointing a guardian, the court "shall consider persons otherwise qualified" in the order of priority established by the statute. Minn.Stat. § 524.5–309(a). The statutory priority relevant to this proceeding is as follows:

(1) a guardian, other than a temporary or emergency guardian, currently acting for the respondent in this state or elsewhere;

(2) an agent appointed by the respondent under a health care directive pursuant to chapter 145C; . . .

(4) an adult child of the respondent.

*Id.* The statute further provides that the court "may decline to appoint a person having priority and appoint a person having a lower priority or no priority," if to do so would be in the best interests of the proposed ward. Minn.Stat. § 524.5–309(b).

Frey argues that she meets the definition of the second and fourth priorities under the statute and, therefore, is entitled to appointment. Essentially, appellant argues that her appointment should be automatic. We disagree.

The Minnesota Health Care Directives Act (Health Care Act) provides that "the appointment of the health care agent in a health care directive is considered a nomination of a guardian for purposes of [the Guardianship Act]." Minn.Stat. § 145C.07, subd. 2 (2006). But more importantly, the Guardianship Act gives the court discretion to decline the appointment of a person having priority if it is not in the ward's best interest. Minn.Stat. § 524.5–309(b).

Frey next argues that the Health Care Act limits the discretion of the district court to decline appointment of a person with a higher priority if doing so is not in the ward's best interests. Specifically, Frey contends that Minn.Stat. § 145C.10(c) (2006) creates a presumption in her favor, absent clear and convincing evidence to the contrary. Vandermolen argues that the presumption in Minn.Stat. § 145C.10(c) is not applicable and does not limit the court's discretion under Minn. Stat. § 524.5–309.

We interpret statutes according to their plain and ordinary meaning. Minn.Stat. § 645.08(1) (2006). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2006). The Guardianship Act is based on a uniform law and, therefore, should be "interpreted and construed to effect [the] general purpose to make uniform the laws of those states which enact them." Minn.Stat. § 645.22 (2006). But only two other states have adopted this law, and neither state's caselaw sheds light on the question before us.[2] Thus, we turn to the language of the Minnesota statute.

---

**2.** The Uniform Guardianship and Protective Proceedings Act has been adopted by Colorado, Hawaii, and Minnesota. Unif. Guardianship & Prot. Proceedings Act (1997). But neither Colorado nor Hawaii has a health care directives act that creates the same presumption at issue here, and thus, their caselaw is not helpful. Additionally, Colorado specifically altered the language of the uniform act provision authorizing the court to deviate from the stated priorities. Under Colorado law, "[t]he court, *for good cause shown,* may decline to appoint a person having priority and appoint a person having a lower prior-

The Health Care Act provides that the health care agent is "presumed to be acting in good faith, absent clear and convincing evidence to the contrary." Minn.Stat. § 145C.10(c). The phrase "act in good faith" means acting consistently with the health care directive or other directions of the principal. Minn.Stat. § 145C.01, subd. 1a (2006). Or, if there is not adequate guidance in the directive, " 'act in good faith' means acting in the best interests of the principal, considering the principal's overall general health condition and prognosis and the principal's personal values to the extent known." *Id.*

■ Based on our reading of the statute, we conclude that the presumption in Minn.Stat. § 145C.10(c) does not apply to the appointment of a guardian under Minn. Stat. § 524.5–309 and does not limit the discretion of the district court to decline appointment of a person nominated in the health care directive. First, the presumption in the Health Care Act that a health care agent, when making health care decisions, is acting in good faith addresses a wholly different question than whether the health care agent's appointment as guardian would be in the ward's best interests. Second, Minn.Stat. § 524.5–309 does not incorporate the presumption or the clear and convincing standard set forth in Minn. Stat. § 145C.10. If the legislature had intended to limit the district court's discretion to decline to appoint a person with higher priority, in favor of another whose appointment is found to be in the best interests of the ward, it could have done so. We discern no legislative intent to so limit the discretion of the district court. Therefore, we do not read the Health Care Act to require that a clear and convincing

standard of proof be applied. Rather, the appropriate standard of proof is a preponderance of evidence.

## II.

■ Frey argues that the district court abused its discretion in not appointing her as guardian and finding that her mother's best interests required appointment of a neutral third-party as guardian. The "appointment of a guardian is uniquely within the discretion of the appointing court," and we will not interfere with the exercise of that discretion except in the case of a clear abuse of discretion. *Kowalski*, 478 N.W.2d at 792. A reviewing court is limited to determining whether the district court's findings are clearly erroneous, giving due regard to the district court's determinations regarding witness credibility. Minn. R. Civ. P. 52.01; *In re Conservatorship of Lundgaard*, 453 N.W.2d 58, 60–61 (Minn.App.1990). Thus, we will defer to the district court's finding that Frey's appointment was not in Wells's best interests, unless that finding is clearly erroneous.

Frey argues that the district court failed to explain its reasoning, which is reversible error under *Lundgaard*, 453 N.W.2d at 61. But the court expressly stated that the conflict between Frey and Vandermolen was not in Wells's best interests, and found that the conflict "has the potential to cause [Wells] aggravation and anxiety should it escalate." Specifically, the court found that Frey and Vandermolen had involved the long-term-care-facility staff and law enforcement in their disputes over their mother's care and that Frey had failed to provide information to Vandermolen about her mother's care. Thus, Frey's

ity or no priority." Colo.Rev.Stat. § 15–14–310(3) (2006) (emphasis added). Thus, Colorado caselaw is not helpful in determining whether a nominated health care agent is

presumed to be a suitable guardian whose appointment is in the best interests of the ward.

assertion that the court did not explain its reasoning is unfounded.

Frey next argues that the conflict with her sister does not support a finding that her appointment would not be in her mother's best interests because the conflict—identified by the court as "longstanding"—existed at the time her mother nominated her to be her guardian and that her mother appointed her despite the conflict.

But, the guardianship statute requires the court to consider both the ward's expressed preferences and the ward's best interests. Minn.Stat. § 524.5–309(b). The district court considered Wells's expressed preferences that Frey be appointed guardian and that Vandermolen have access to her medical information, the sisters' demonstrated inability to cooperate, and the likely impact on Wells. Here, the court found that appointing Frey would exacerbate the intra-family dispute with Vandermolen, which was not in the best interests of the ward. Thus, the court determined that appointment of a neutral third-party guardian was in the ward's best interests. *See In re Conservatorship of Edwards*, 390 N.W.2d 300, 305 (Minn.App.1986) (appointing third party as conservator when children could not agree on how father should be cared for); *Schmidt v. Hebeisen*, 347 N.W.2d 62, 64 (Minn.App.1984) (appointing third party as conservator when ward's grandchildren alleged the ward's daughter had converted ward's assets).

Frey suggests that the harm the court identified is not severe enough to support a conclusion that her appointment is not in her mother's best interests and relies on *Kowalski*. In *Kowalski*, the ward nominated her lesbian partner as her guardian, but her parents threatened to sever all ties with their daughter if the partner was appointed. 478 N.W.2d at 794. The district court, citing the conflict between the parties, appointed a third-party guardian

rather than the partner or parents. *Id.* This court reversed and remanded for appointment of the partner, holding that the court need not "accommodate one side's threatened intransigence, where to do so would deprive the ward of an otherwise suitable and preferred guardian." *Id.* at 795. Here, both sides participated in the escalation of the conflict.

Frey nonetheless argues that family conflict is not sufficient, and that there must be specific evidence of tangible harm to the ward. She relies on *Edwards* and *Schmidt* to support her argument. We disagree. In *Edwards*, we affirmed the district court order appointing a third party, concluding that the best interest of the ward was paramount and that the court properly exercised its discretion. We stated, "[t]he children cannot agree upon who should care for their aged father. Thus, it is appropriate that a third party be charged with that responsibility." *Edwards*, 390 N.W.2d at 305 (citing *In re Guardianship of Strom*, 205 Minn. 399, 405, 286 N.W. 245, 249 (1939) and *Schmidt*, 347 N.W.2d at 64). Here, the district court concluded that a family dispute puts family member petitioners at odds with the best interests of the ward. It found that Frey "willfully and intentionally" prohibited Vandermolen from obtaining their mother's information and involved law enforcement and the care facility's staff in their disputes. By statute, the district court has the discretion to decline appointment of a petitioner if it is in the best interests of the ward to do so. Minn.Stat. § 524.5–309(b). We do not read the statute to limit the court to specific evidence of tangible harm.

Therefore, because the court's conclusion that Frey's appointment is not in the best interests of the ward is supported by the evidence and not clearly erroneous, the district court did not abuse its discretion

by declining to appoint Frey as Wells's guardian.

## DECISION

Because Minn.Stat. § 524.5–309 does not require a heightened standard of proof in guardianship proceedings, a party opposing appointment of a person with priority under the Uniform Guardianship and Protective Proceedings Act must establish by a preponderance of the evidence that appointment is not in the best interests of the ward. The district court's finding that appointment of Frey was not in the best interests of the ward was not clearly erroneous and is supported by the record. Accordingly, we affirm the appointment of a third-party guardian.

**Affirmed.**