*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0252**

In re: Guardianship of Brianna Orwig,
Person Subject to Guardianship.

**Filed November 20, 2023**
**Affirmed**
**Kirk, Judge**[*]

Hennepin County District Court
File No. 27-GC-PR-18-181

Kathryn A. Graves, Benjamin J. Hamborg, Henson & Efron, P.A., Minneapolis, Minnesota (for appellant Leigh Orwig)

Mary F. Moriarty, Hennepin County Attorney, Brittany D. LaWonn, Reid Raymond, Assistant County Attorneys, Minneapolis, Minnesota (for respondent Hennepin County)

Edward Kautzer, Ruvelson & Kautzer, Roseville, Minnesota (for respondent guardian ad litem Joshua Casper)

Stacy L. Kabele, Kabele Law Firm and Mediation L.L.C., Minnetonka, Minnesota (for respondent guardian Renee Roland)

Brock Orwig, Jr., Manitowish Waters, Wisconsin (self-represented respondent)

Daniel Kufus, Steinhagen, Crist, Wehrly & Kufus, P.L.L.P., Minneapolis, Minnesota (for respondent Brianna Orwig)

      Considered and decided by Larkin, Presiding Judge; Wheelock, Judge; and Kirk, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KIRK**, Judge

Appellant Leigh Orwig challenges the appointment of respondent Renee Roland as successor guardian to respondent Brianna Orwig, the person subject to guardianship (PSG). Leigh argues that the district court abused its discretion by appointing Roland and erred by not considering the PSG's rights. We affirm.

**FACTS**

The following facts are derived from the district court's findings of fact from the October 12, 2022, order denying Leigh's[1] petition to be appointed the PSG's successor guardian and its June 30, 2022, order denying Leigh's subsequent petition and appointing Roland as successor guardian. There is no dispute that the PSG requires a guardian.

In 2018, the PSG's father, respondent Brock Orwig, petitioned the district court to appoint a guardian for the PSG. The PSG's mother, Leigh, counter petitioned. Pursuant to a settlement agreement between Brock, Leigh, respondent Hennepin County, and the PSG's then-guardian ad litem (GAL), the county did not further pursue the pending termination of parental rights and Brock and Leigh agreed to the appointment of a neutral third-party guardian for the PSG. A professional guardian, Bertina Bell, was appointed in January 2019, and she resigned, for personal reasons unrelated to the case, in January 2020.

During 2019 and 2020, both Brock and Leigh filed petitions, and objections to each other's petitions, regarding the appointment of a successor guardian for the PSG. Brock

---

[1] We refer to the members of the Orwig family by first name for clarity.

withdrew his petition, and the district court held a July 1, 2021, bench trial on Leigh's petition to be appointed the PSG's successor guardian. The district court filed an order on October 12, 2021, denying Leigh's petition.

The order contained detailed findings of fact about Leigh's suitability as the PSG's successor guardian. It described the dissolution proceeding between Brock and Leigh, and Leigh's fifty-year extension of her order for protection against Brock after he assaulted her and her subsequent fear for her life. The order also summarized the GAL's concerns[2] about Leigh, including three child-protection cases resulting in the PSG spending 509 days in out-of-home placement; Leigh's maltreatment of the PSG,[3] her extensive history of alcohol misuse and abuse, alienation of professionals, and exaggeration of the PSG's health concerns; the possibility that Leigh would make decisions without consulting professionals; and both Leigh's and Brock's "inability to help the PSG achieve healthy relationships with other third parties." Although the district court determined Leigh's testimony to be "sincere" about her love and concern for the PSG and commended her sobriety, it also explained that it could not ignore the evidence presented at trial and ultimately determined "that [Leigh] is neither the most suitable nor the most qualified to act as the PSG's successor guardian." As a result, the district court concluded that "the

___

[2] In addition to testifying, the GAL filed a report on June 21, 2021, and a corrective supplemental report on June 30, 2021, which the district court admitted at trial. The district court found the testimony and reports "to be thorough, comprehensive and credible."

[3] Hennepin County authorities made three determinations that Leigh maltreated the PSG— one in April 2015, one in January 2016, and one in January 2018—which involved Leigh's neglect of the PSG while Leigh was intoxicated.

continued appointment of an independent professional guardian is in the best interests of the PSG." Leigh did not appeal this 2021 order.

In November 2021, Cheryl Zitto, a Hennepin County employee acting on behalf of the PSG, petitioned to have Roland appointed as successor guardian.[4] Leigh objected and petitioned to be appointed as a co-guardian with Roland or as the sole successor guardian. The district court held a bench trial on April 19-20, 2022, at which it admitted six exhibits and heard testimony from Zitto, Roland, Leigh, the GAL, Rachel Kahle (who employed Leigh as a caretaker and supported Leigh's appointment), and Rebecca Moore (Kahle's mother, who similarly supported Leigh's appointment). The district court also took judicial notice of the dissolution file involving Leigh and Brock, the child-protection file involving the PSG, and the GAL's April 9, 2022, report and April 19, 2022, correction.

In its June 30, 2022, order, the district court found, by clear and convincing evidence, that the PSG remains an incapacitated person and that "Roland is the most suitable and best qualified among those available and willing." Then, after noting its October 12, 2021, order, the district court explained that "[t]he court's opinion has not changed with respect to the appointment of [Leigh] as the PSG's successor guardian" and that "[t]he court continues to have concerns regarding the appointment of [Leigh]." Thus, the district court concluded that, although Leigh had priority under the statutory guardianship scheme:

> Here, the contentious relationship between the PSG's parents,
> and the resulting litigation, are not in the PSG's best interests.

---

[4] Ja'Na Dickens also petitioned to be appointed successor guardian, but the parties to agreed that Dickens withdrew that petition.

4

> Additionally, [the PSG's attorney] stated it was the PSG's desire to have a relationship with both of her parents, and [the GAL] expressed concerns that [Leigh] would not support a relationship between the PSG and her father. The court also shares these concerns.

As a result, the district court appointed Roland as successor guardian.

Leigh appeals the June 30, 2022, order appointing Roland as successor guardian. Roland, Hennepin County, the GAL, and Brock all filed responsive briefs defending Roland's appointment.

## DECISION

Leigh challenges the order denying her petition to be appointed guardian and appointing Roland on the grounds that it was in the PSG's best interests.

"The appointment of a guardian is a matter within the discretion of the district court and will not be disturbed absent a clear abuse of that discretion." *In re Guardianship of Autio*, 747 N.W.2d 600, 603 (Minn. App. 2008). "A reviewing court is limited to determining whether the district court's findings are clearly erroneous, giving due regard to the district court's determinations regarding witness credibility." *In re Guardianship of Wells*, 733 N.W.2d 506, 510 (Minn. App. 2007), *rev. denied* (Minn. Sept. 18, 2007) (citing Minn. R. Civ. P. 52.01).

Leigh argues: (1) that the district court abused its discretion by denying mother's petition to be appointed the PSG's successor guardian and (2) that the district court erred

as a matter of law by failing to consider the PSG's rights under Minnesota Statutes section 524.5-120 (2022). [5] We address each argument in turn.

## I. The district court did not abuse its discretion by denying Leigh's petition to be appointed successor guardian.

Leigh argues that the district court abused its discretion by denying her petition to be appointed the PSG's successor guardian and appointing Roland, a third party with lower statutory priority to be appointed guardian than Leigh, on the grounds that it was in the PSG's best interests.

The parties agree that it is appropriate for a guardian to be appointed for the PSG; they disagree as to the proper party to appoint as guardian. *See* Minn. Stat. § 524.5-310 (2022) (setting forth factual bases for appointment of a guardian). The parties do not dispute the district court's determination that Leigh, as the PSG's biological mother, has statutory priority to be her guardian. *See* Minn. Stat. § 524.5-309 (a)(7)-(8) (providing that "an adult who is related to the respondent by blood" has higher priority than a "professional guardian."). However, the district court exercised its statutory authority to appoint Roland, a third-party adult with lower priority, because doing so was in the PSG's best interests. *See* Minn. Stat. § 524.5–309(b) ("The court, acting in the best interest of the respondent, may decline to appoint a person having priority and appoint a person having a lower

---

[5] We note that the legislature amended Minnesota Statutes sections 524.5-120 and 524.5-10 in 2020. *See* 2020 Minn. Laws ch. 86, art. 1, §§ 13, 20 at 298-300, 306-07; s*ee also Harris ex rel.Banks v. Gellerman*, 954 N.W.2d 604, 608 (Minn. App. 2021) (providing an overview of the changes to Minnesota Statute section 524.5120 specifically). Because these amendments do not change the substance of the applicable statutes, we cite the most recent version of those statutes.

priority or no priority."); *see also In re Guardianship of Schober*, 226 N.W.2d 895, 898 (Minn. 1975) ("The best interests of the [PSG] should be the decisive factor in making any choice on [their] behalf.") (quotation omitted). The district court concluded that the contentious relationship between Leigh and Brock, the resulting litigation, and Leigh's inability to promote a relationship between Brock and the PSG meant that appointing Leigh as the PSG's guardian was "not in the PSG's best interests." We will defer to the finding that Leigh's appointment was not in the PSG's best interests, unless that finding is clearly erroneous. *See Wells*, 733 N.W.2d at 510.

Leigh argues that the district court abused its discretion by determining that appointing Leigh would not be in the PSG's best interests. First, Leigh argues that the district court clearly erred by finding that she would not support a relationship between Brock and the PSG. Leigh highlights her own testimony that if she was appointed as the PSG's guardian, she would facilitate visitation between Brock and the PSG.

In its June 2022 order, the district court determined that having Leigh as guardian would not be in the PSG's best interests because she cannot facilitate a relationship with Brock. It recognized that Leigh testified that the PSG and Brock should have a relationship and what services Leigh would need to facilitate visitation. However, the GAL explained that Leigh would likely not actually promote a relationship, and this could lead to further litigation. The district court found the GAL's testimony credible and, accordingly, determined that Leigh would be unable to facilitate visitation with Brock as the PSG's guardian. And as the county correctly states, we defer to the district court's credibility determination on appeal. *See id.* at 510.

7

Second, Leigh challenges several of the district court's factual findings. She argues that the record contains other conflicting evidence, mainly her own testimony, that justifies alternative factual findings.

This court will not set aside the district court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quoting *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 726 (Minn. 1985)). When reviewing findings of fact for clear error, appellate courts (a) "view the evidence in a light favorable to the findings"; (b) do not find their own facts; (c) do not "reweigh the evidence"; and (d) do not "reconcile conflicting evidence." *Kenney*, 963 N.W.2d at 221-22 (quotations omitted). "When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted). Consequently, an appellate court need not provide "an extended discussion of the evidence" to show that the district court's factual findings are correct. *Id.* at 222 (quotation omitted). Rather, "an appellate court's duty is fully performed" when it fairly considers "all the evidence and has determined that the evidence reasonably supports the decision." *Id.* (quotation omitted).

We have thoroughly reviewed the record, especially the testimony from the April 19-20, 2022, bench trial, and conclude it reasonably supports the district court's findings. *See id.* In her briefing, Leigh simply marshals evidence that could support findings other than those the district court made. But the district court determined that much of this

8

evidence was not credible and we must defer to its credibility determinations. *Wells*, 733 N.W.2d at 510. Moreover, we may not "reconcile conflicting evidence" or "reweigh the evidence" when reviewing for clear error. *Kenney*, 963 N.W.2d at 221-22 (quotations omitted). Thus, when the evidence is viewed in the light most favorable to the district court's findings, those findings were not clearly erroneous.

Third, Leigh argues that the district court abused its discretion by ignoring her concerns about the PSG's health.

As a preliminary matter, the record supports that the district court considered Leigh's concerns about the PSG's health. In its June 2022 order, the district court expressly discussed Leigh's concerns about the PSG's health including constipation, weight loss, and collapsed arches. It stated that Leigh testified that she does not believe the PSG's health issues have been adequately addressed and that this has impacted the PSG's demeanor. However, the district court stated that Leigh testified that she has not had access to the PSG's health records and the PSG's guardian cannot share this information with Leigh. The district court also noted Leigh's admission that she did "not know whether her concerns [were] being addressed."

On appeal, Leigh reasserts her concerns about the PSG's health and recognizes, but does not address, the district court's reasoning that she has not had access to the PSG's medical records. The county highlights, and the record supports, that the PSG's attorney, GAL, temporary guardian, and Roland have not raised concerns about the PSG's medical care. The county further argues that the PSG's GAL, whose testimony the district court found credible, explained that Leigh has often exaggerated the PSG's symptoms and health

9

concerns, but those concerns have not been "substantiated by medical professionals." And we defer to this credibility determination. *See Wells*, 733 N.W.2d at 510. As a result, the district court did not abuse its discretion in considering the PSG's health.

In sum, the district court did not abuse its discretion by determining that appointing Roland as the PSG's successor guardian, rather than Leigh, was in the PSG's best interests.

## II. The district court did not err as a matter of law by failing to consider the PSG's rights under Minnesota Statutes section 524.5-120.

Leigh argues that the district court erred as a matter of law by failing to consider the PSG's rights under Minnesota Statutes section 524.5-120 when denying Leigh's petition.

Under the bill of rights of persons subject to guardianship, individuals maintain a non-exhaustive list of rights, including, in relevant part, "due consideration of current and previously stated personal desires" of the PSG. *Id.* § 524.5-120. The statute provides that rights retained by the PSG "must be enforced by the court." *Id.*

Leigh contends that the district court failed to consider the PSG's rights when it did not adequately consider the PSG's expressed preference to live with Leigh. The argument misstates the district court's June 2022 order, in which it discussed the PSG's expressed preferences at length. In that order, the district court noted the PSG's preference to "live with" Leigh and for both Leigh and Roland to be her guardian. However, the district court ultimately concluded that the PSG's preference is not determinative in this case because the GAL, whose testimony and reports the district court found credible, concluded that she is unable to make informed choices. And again, we defer to the district court's credibility

10

determination. *Wells*, 733 N.W.2d at 510. Thus, the district court did consider the PSG's preference and did not err by appointing Roland as her guardian.

In sum, the district court did not err because it properly considered the PSG's expressed preference to live with Leigh.

**Affirmed.**