# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A23-0865

In re the Guardianship of:
Jeferson De Jesus Lemus Corpeno.

**Filed January 29, 2024**
**Reversed and remanded**
**Worke, Judge**

Anoka County District Court
File No. 02-JV-22-1022

C. Alexander Anderson-Cazales, Square 1 Legal, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Worke, Judge; and Ede, Judge.

## SYLLABUS

A district court cannot deny a petition for guardianship of an at-risk juvenile under Minn. Stat. §§ 257D.01-.12 (2022), unless it makes sufficient findings justifying its rejection of the allegations in the petition asserting "abandonment," "abuse," and "neglect," as defined in Minn. Stat. § 257D.01.

## OPINION

**WORKE**, Judge

Appellant challenges the district court's denial of his petition for a juvenile court guardianship for at-risk youth, arguing that the record does not support the district court's

determinations regarding the possibility of appellant's reunification with his parents and appellant's credibility. We reverse and remand.

## FACTS

In December 2022, appellant Jeferson De Jesus Lemus Corpeno,[1] currently 19 years old, filed a "Petition for Guardianship of At-Risk Juvenile" under Minn. Stat. § 257D.03, subd. 2. The proposed guardian was Corpeno's paternal grandmother, Juana Rodriguez.

Generally, a district court can grant a guardianship of an at-risk juvenile, if it rules, among other things, that the person who is the subject of the petition suffered "abandonment" or "abuse" or "neglect." Under Minn. Stat. § 257D.01, each of these conditions can be satisfied by one or more of multiple circumstances. Here, Corpeno's petition alleged abandonment and neglect, but not abuse.

Specifically, in his petition, Corpeno alleged that until 2022, he lived in El Salvador with his maternal grandmother. Corpeno arrived in the United States in January 2022 and began living with Rodriguez shortly thereafter. Corpeno alleged that he left El Salvador after a gang threatened to kill him because he refused to join the gang. He averred that his maternal grandmother sold land and gave him the money to flee.

Corpeno alleged that his mother lived in El Salvador and left him with his maternal grandmother when he was three or four years old. Corpeno averred that his mother visited him "4-5 times a year for a couple of hours." He alleged that his mother did not provide

---

[1] Appellant identifies himself in the brief as Jeferson De Lemus Corpeño but we align our references to parties with the case caption.

financial support and he did "not believe that his mother has any interest in taking him and helping him in any[]way."

Corpeno alleged that his father lived in El Salvador and abandoned him before he was born. Corpeno alleged that his father approached Corpeno when he was 12 years old and expressed a desire to get to know Corpeno. But Corpeno's father did not offer to care for Corpeno or ask Corpeno to live with him.

At a hearing on the petition, Corpeno further explained his relationship with his parents. He testified that he does not have a good relationship with his mother, and that she "was not able to help" him when he was threatened by gang members. The district court asked Corpeno how often he saw his mother, and he replied, "two to three times per year." The district court noted that in his petition, Corpeno claimed that he saw his mother "four to five times a year." Corpeno explained: "So in some locations they came about four or five times a year, but in some other years . . . two to three times per year." Corpeno testified that he saw his father when he was ten years old. He stated that his father never took Corpeno into his home or cared for him. Corpeno was not aware of his father providing financial support.

In April 2023, the district court filed an order denying the petition. The district court noted that to grant the petition, it must find, among other things, that reunification of the at-risk juvenile with one or both parents is not viable because of abandonment, neglect, or abuse. The district court concluded that the "evidence that [Corpeno] was abandoned, abused, neglected, or any similar action by his parents" was insufficient. The district court stated:

3

[Corpeno] testified that his mother regularly visited him, giving different answers of two to three, three to four, and four to five times per year. These regular visits continued to occur even after [Corpeno] stated his grandmother told him he had been abandoned. The Court also finds that [Corpeno]'s father, although abandoning him earlier in life, reconciled with [Corpeno] in order to get to know him again. [Corpeno] therefore failed to prove that reunification is not viable because of abandonment. [Corpeno] also did not aver that either of his parents ever abused him. Finally, [Corpeno] claimed that he was neglected because neither his father nor his mother could protect him from . . . gang members. However, the Court does not find that he proved that his parents' actions or inactions caused his health or welfare or mental health to be harmed, or that his parents' actions or inactions placed him at substantial risk of harm or mental injury. [Corpeno] never tied the actions or inactions of his parents to any gang threats towards him. Finally, [Corpeno] failed to sufficiently prove that any of these or similar bases would render reunification unviable.

This appeal followed.

## ISSUES

I.      Did the district court clearly err in finding that appellant failed to establish that reunification with one or both parents was not viable?

II.     Did the district court clearly err in its credibility determination?

## ANALYSIS

### I.      The district court's findings regarding reunification are insufficient.

Corpeno filed a petition for guardianship of an at-risk juvenile under new legislation (Chapter 257D) that creates a type of guardianship—the guardianship of an at-risk juvenile—that is distinct from the guardianships traditionally associated with probate law. "The purpose of the guardianship . . . is to provide an at-risk juvenile with guidance, assistance, financial and emotional support, and referrals to resources necessary to . . . meet

the at-risk juvenile's needs . . . or . . . protect the at-risk juvenile from sex or labor

trafficking or domestic or sexual violence."[2]  Minn. Stat. § 257D.02.

> An at-risk juvenile may petition the juvenile court for the appointment of a guardian.  The petition must state the name of the proposed guardian and allege that:
>
> > (1) the appointment of a guardian is in the best interests of the at-risk juvenile;
> >
> > (2) the proposed guardian is capable and reputable;
> >
> > (3) both the petitioner and the proposed guardian agree to the appointment of a guardianship under this chapter;
> >
> > (4) reunification of the at-risk juvenile with one or both parents is not viable because of abandonment, abuse, neglect, or a similar basis that has an effect on the at-risk juvenile comparable to abandonment, abuse, or neglect under Minnesota law; and
> >
> > (5) it is not in the best interests of the at-risk juvenile to be returned to the at-risk juvenile's or at-risk juvenile's parent's previous country of nationality or last habitual residence.

Minn. Stat. § 257D.03, subd. 2.[3]

---

[2] At the hearing, the district court inquired about potential collateral consequences if it granted the petition.  While we do not fault the district court for seeking to understand the broader context of this new statute, we note that because this case involved no allegation that the relevant statutory language is ambiguous, the district court's decision whether to grant a petition filed under section 257D.03, subdivision 2, was required to be based on the statutory criteria set forth in Chapter 257D, rather than asserted or perceived collateral consequences of the decision.  *See Getz v. Peace*, 934 N.W.2d 347, 353-54 (Minn. 2019) (stating that "[i]f the meaning of a statute is unambiguous, the plain language of the statute controls[,]" and that "absent ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit" (quotations omitted)); *Cnty. of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013) (stating that courts "do not add words or phrases to an unambiguous statute").

[3] Minnesota Statutes Chapter 257D does not set forth a standard of proof applicable to a district court's decision whether to grant a petition filed under section 257D.03, subdivision 2.  "Whe[n] the legislature has not specified a standard of proof for a statutorily created cause of action, courts presume that the legislature intended the preponderance-of-the-evidence standard to apply."  *T.E.S. Const., Inc., v. Chicilo*, 784 N.W.2d 392, 397 (Minn. App. 2010), *rev. denied* (Minn. Sept. 21, 2010).

The district court "must issue an order awarding a guardianship for the purposes identified in section 257D.02 if the court finds" that each of the five circumstances required to be alleged in the petition exist. Minn. Stat. § 257D.08, subd. 1. The district court's

> order must contain the following three judicial determinations, each supported by relevant state statutory citations and written findings of fact:
> (1) the at-risk juvenile is dependent on the juvenile court, and has been placed under the custody of an individual appointed by the juvenile court, through the appointment of a guardian, for the purposes of this chapter;
> (2) reunification of the at-risk juvenile with one or both parents is not viable because of abandonment, abuse, or neglect or a similar basis that has an effect on the at-risk juvenile comparable to abandonment, abuse, or neglect under Minnesota law; and
> (3) it is not in the best interests of the at-risk juvenile to be returned to the at-risk juvenile's or at-risk juvenile's parent's country of nationality or last habitual residence.

*Id.*, subd. 2(b).

The district court denied the petition because it found that Corpeno failed to establish that "reunification . . . with one or both parents is not viable because of abandonment, abuse, or neglect or a similar basis that has an effect on the at-risk juvenile comparable to abandonment, abuse, or neglect under Minnesota law." Corpeno argues that the district court erred in finding that Corpeno failed to prove that reunification with one or both parents was not viable.

We review factual findings for clear error. *In re Guardianship of Wells*, 733 N.W.2d 506, 510 (Minn. App. 2007), *rev. denied* (Minn. Sept. 18, 2007). This court will not conclude that the district court clearly erred "unless, on the entire evidence, we are left with

6

a definite and firm conviction that a mistake has been committed." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted).

Reunification is not viable because of abandonment, abuse, or neglect or a similar basis under Minnesota law. Minn. Stat. § 257D.08, subd. 1(4). The statute shows that "abandonment" can exist for one or more of three separate reasons: (1) a parent's lack of regular contact; (2) a parent's lack of consistent interest in the juvenile's well-being; and (3) death of a parent. Minn. Stat. § 257D.01, subd. 2.

Here, death of a parent is not at issue. Regarding the other two bases for abandonment, the district court stated:

> [Corpeno] testified that his *mother regularly visited him*, giving different answers of two to three, three to four, and four to five times per year. These regular visits continued to occur even after [Corpeno] stated his grandmother told him he had been abandoned. The Court also finds that [Corpeno]'s *father, although abandoning him earlier in life, reconciled with [Corpeno] in order to get to know him again.* [Corpeno] therefore failed to prove that reunification is not viable because of abandonment. (Emphasis added.)

It appears that the district court concluded that Corpeno's mother did not abandon Corpeno because she regularly visited him—she maintained regular contact. *See id.* It also appears that the district court concluded that Corpeno's father did not abandon Corpeno because Corpeno's father wanted to get to know Corpeno—at one point showing an interest in Corpeno's well-being. *See id.* But there are three bases for a ruling of abandonment and the establishment of any one of the three can be sufficient to show abandonment. Therefore, a failure to establish one of those bases is insufficient to conclude that Corpeno is not abandoned. The district court's findings are insufficient because it did

not make a finding as to whether Corpeno's mother and father showed consistent interest in Corpeno's well-being. And they are insufficient because the district court did not make a finding as to whether Corpeno's father maintained contact with Corpeno on a regular basis.

We must remand to the district court to address all bases for "abandonment" for each parent put at issue by the petition. *See Edina Cmty. Lutheran Church v. State*, 673 N.W.2d 517, 523 (Minn. App. 2004) (stating district court must make findings adequate to enable meaningful appellate review). On remand, whether to reopen the record, and whether to hold a hearing—evidentiary or otherwise—shall be at the discretion of the district court.

Corpeno also argues that he showed that he was neglected by his parents because he demonstrated that "they failed to provide any support" or did "anything to fill their role as parents."

"Neglect," under section 257D.01, subdivision 8

> means, at any time prior to an at-risk juvenile reaching the age of 18, the failure to give an at-risk juvenile proper care that causes the juvenile's health or welfare to be harmed or placed at substantial risk of harm or causes mental injury or a substantial risk of mental injury.

The district court found that Corpeno claimed that his parents neglected him because neither could protect him from the gang in El Salvador that threatened to kill him. But the district court found that Corpeno failed to prove that the actions or inactions of his parents caused his health or welfare or mental health to be harmed because the record does not establish a connection between the gang and Corpeno's parents. Because we are

8

remanding on the lack of findings regarding abandonment, we need not address this issue at this time.[4]

## II. The district court failed to make a credibility determination.

Corpeno also claims that the district court should not have negatively judged his credibility because of a minor inconsistency regarding the frequency of the visits from his mother. This court defers to the credibility determinations of the district court. *See In re Conservatorship of Lundgaard*, 453 N.W.2d 58, 61 (Minn. App. 1990). But for us to do so, the district court must make a credibility determination.

Here, the district court recited much of Corpeno's testimony. And it found "[Corpeno]'s credibility [was] at issue." But it did not determine that it credited or discredited Corpeno's testimony. Credibility is at issue in all cases. Stating that credibility is "at issue," is not making a credibility determination. The district court did not address credibility. On remand, in addition to making sufficient findings as discussed above, the district court will evaluate Corpeno's credibility and provide determinations regarding why it finds Corpeno to be credible or not credible. *See In re Welfare of Child of: H.G.D.*, 962 N.W.2d 861, 873 (Minn. 2021) (stating that we defer to district court's credibility determination because district court is in "superior position to assess the credibility of witnesses" (quotation omitted)).

---

[4] We remind the district court that when addressing a petition for the guardianship of an at-risk juvenile under section 257D.03, subdivision 2, *each* basis for a neglect-ruling must be addressed in a manner sufficient to allow appellate review.

**DECISION**

When addressing a petition for a guardianship of an at-risk juvenile, the district court must address each basis for "abandonment," "abuse," and "neglect" as those terms are defined in section 257D.01 that are alleged in the petition. We reverse and remand because the district court failed to address each basis for abandonment and neglect put at issue by the petition filed in this case.

**Reversed and remanded.**