# IN RE GUARDIANSHIP OF THE ESTATE AND PERSON OF LILLIAN SCHOBER.

226 N. W. 2d 895.

February 28, 1975—No. 45481.

*Rischmiller & Wasche* and *Robert Wm. Rischmiller,* for petitioner.

*Johnson, Fredin, Killen, Thibodeau & Seiler, Conrad M. Fredin,* and *Terry C. Hallenbeck,* for respondent Elizabeth Nelson Stetson.

*Hanft, Fride, O'Brien & Harries* and *C. Byron Holje,* for respondent Northern City National Bank of Duluth.

*Vesely, Otto, Miller & Keefe, John B. Keefe, Newby & Dodge,* and *Daniel P. Haley,* for other respondents.

PER CURIAM.

The subject for consideration comes to this court upon a petition for a writ of prohibition.

This matter arises out of the guardianship of Mrs. Lillian Schober, born June 26, 1888, the widow of Charles Schober. Mr. Schober died in the early 1960's and left Mrs. Schober with assets, now valued in excess of $11 million, consisting primarily of corporate stock. Northern City National Bank of Duluth, guardian herein, was executor of Mr. Schober's estate and currently is guardian of the estate of Mrs. Schober, who is now

living in a nursing home in Duluth. No children were born to Mr. and Mrs. Schober. Mrs. Schober's next of kin include a grand-niece, Mrs. Elizabeth Nelson Stetson, whose father was a nephew of Mrs. Schober; a brother of Mrs. Schober, Mr. Albert Nelson, age 88; and various nieces and nephews. Mr. Anthony M. Annoni, who is the husband of Mr. Schober's niece, was adopted as a son by Mrs. Schober on October 6, 1972, and is the petitioner herein.

Mrs. Stetson petitioned for the appointment of a guardian of Lillian Schober in December 1973, and on January 22, 1974, Northern City National Bank was appointed guardian of her estate. There is no question Mrs. Schober at the time of the appointment of the guardian was irreversibly incompetent due to old age and certain physical infirmities. On April 4, 1974, Mr. Annoni petitioned to be appointed a guardian of her person. Thereafter, in May 1974, Mrs. Stetson petitioned the court requesting that the court appoint Northern City National Bank and Dr. Peter Rudie special coguardians of the person of Mrs. Schober, alleging that there was cause for concern whether Mrs. Schober knowingly and voluntarily adopted Anthony Annoni and whether she understood and appreciated the legal significance of her act when she created a substantial joint tenancy account with him. Raised also was the possibility of the execution of a will by Mrs. Schober under circumstances indicating the instrument was executed when Mrs. Schober was without testamentary capacity.

After a hearing, the judge of the St. Louis County Court, probate division, recognizing that there was a serious question as to his authority to do so, issued an order appointing the special coguardians and charging Northern City National Bank with the following duties:

"(a)  To have the authority to inquire into and, in its judgment, to litigate, issues relating to the creation of a joint tenancy account between said Lillian Schober and Anthony M. Annoni;

"(b)  To inquire into and, in its judgment, to litigate, issues

relating to the purported adoption of Anthony M. Annoni by Lillian Schober;

"(c) To, in its judgment, preserve such testimony as may be pertinent with regard to the purported Last Will and Testament of said Lillian Schober executed some time in 1972."

On August 22, 1974, the court issued an order instructing Northern City National Bank as guardian of the estate as follows:

"3. Northern City National Bank of Duluth, as Guardian of the estate of the above named Lillian Schober, be and it hereby is authorized, in its judgment, to proceed in whatever manner deemed appropriate and consistent with the aforesaid order and decision of the Court dated and entered August 6, 1974, and the findings contained therein, including the following:

" 'That there is probable cause to believe that Lillian Schober may not have been mentally competent to give knowing and informed consent to the proceedings resulting in her purported adoption of Anthony M. Annoni; that there is probable cause to believe that said Lillian Schober may not have been mentally competent to consent to the creation of a joint tenancy account with Anthony M. Annoni on or about September 13, 1971, or to appreciate the legal implications of making deposits in such an account form; that there is probable cause to believe that said Lillian Schober may not have been mentally competent to make a testamentary disposition of her property by Will during 1972.' "

Mr. Annoni, upon the issuance of the foregoing orders, petitioned this court for a writ of prohibition. All counsel agree that a writ of prohibition is the proper remedy for review. It should be noted, however, that determination of the merits of a case by writ of prohibition is not the proper office of such a writ. In re Petition of Parks, 262 Minn. 319, 114 N. W. 2d 667 (1962). It is not intended by this decision to decide the merits of any of the matters the probate court ordered investigated. Accordingly, we will not further relate the facts other than to state that the lower

court's findings of fact heretofore quoted are supported by the evidence presented to that court.

We are thus presented with the issue of whether, when a guardian of a ward, incompetent by reason of physical infirmities, has probable cause to believe that the ward, prior to the appointment of the guardian, may not have been mentally competent (1) to make a testamentary disposition of her property by will; (2) to give an informed consent to the proceedings resulting in her adopting a person as her son; and (3) to consent to the creation of a joint tenancy account, the county court has jurisdiction to authorize the guardian to investigate and litigate such matters during the ward's lifetime.

It is clear from our statutes that the basic purpose of guardianship and the duties of a guardian are to protect the ward and his assets. Minn. St. 525.54, subd. 1, relating to persons subject to guardianships, concludes with this sentence: "Nothing herein contained shall diminish the power of any court to appoint a guardian to serve or protect the interest of any minor or other person under disability in any proceedings therein * * *."

Minn. St. 525.56, subd. 3, describing the duties of a guardian, provides:

"A general guardian * * * of the estate shall
* * * * *
"(3) Possess and manage the estate, * * *."

Under the statutes, a special guardian may be given powers not exceeding those conferred upon a general guardian. Minn. St. 525.591.

Specific recognition that protecting and preserving the property of the ward is the real purpose of guardianship exists in our court decisions. In Snicker v. Byers, 176 Minn. 541, 545, 224 N. W. 152, 154 (1929), it is said:

"* * * For the purpose of protecting and preserving the property of wards, the broad power of the court to take such steps as may be for the best interest of the wards, even where no pro-

cedure therefor is prescribed by statute, cannot be seriously doubted."

And, as said in In re Guardianship of Overpeck, 211 Minn. 576, 583, 2 N. W. 2d 140, 144 (1942):

"The best interests of the ward should be the decisive factor in making any choice on his behalf. In re Estate of Carey, 194 Minn. 127, 260 N. W. 320, *supra.* The primary duty of the guardian is to the ward."

Our decision law makes clear the guardian does not stand in the shoes of the ward. In Hagen v. Rekow, 253 Minn. 341, 345, 91 N. W. 2d 768, 771 (1958), this limitation is stated as follows:

"The rule has been stated in general to the effect that one appointed guardian of an estate of an incompetent ordinarily is limited to taking charge of and handling such estate. He does not become the alter ego of the incompetent and is not empowered by virtue of his office to act for the incompetent in matters involving the exercise of personal discretion so as to change an act performed by the incompetent while mentally normal. Matter of Rasmussen, 147 Misc. 564, 264 N. Y. S. 231, involving a savings account in depositor's name in trust for another; Matter of Wainman, 121 Misc. 318, 200 N. Y. S. 893, re change of beneficiary of incompetent's life insurance policy."

From the foregoing it appears that every function of a guardian must answer the question, does the function serve to advance the best interest of the ward and his property?

Accordingly, in analyzing this problem, each of the directions to the guardian by the court orders will be treated separately in the light of the question: How will the function ordered by the court serve the best interest of the ward?

### WILL OF 1972

Was the court within its jurisdiction in ordering the guardian to investigate the circumstances surrounding the execution of the will of 1972?

The petitioner and the guardian are in substantial agreement that the court exceeded its jurisdiction in directing the guardians "[t]o * * * preserve such testimony as may be pertinent with regard to the purported Last Will and Testament of said Lillian Schober executed some time in 1972" and "to proceed in whatever manner deemed appropriate" relative to ascertaining whether "Lillian Schober may not have been mentally competent to make a testamentary disposition of her property by Will during 1972."

The petitioner and the guardian's position is that a will is ambulatory and judicial precedent establishes that a court does not have authority to entertain a suit to establish or annul a will. See, 57 Am. Jur., Wills, § 765. For example, until death activates the will, the proper parties to the suit would not even be ascertainable.

Nothing herein stated should be interpreted as tending to indicate that the parties in their individual capacity do not have the authority under Rule 27, Rules of Civil Procedure, to perpetuate testimony relative to the execution of the will. It must be clear, however, that the right is to be exercised in their individual capacity and not at the expense of the ward's assets.

ADOPTION PROCEEDING

Petitioner in opposing the order directing an investigation of the adoption proceedings urges that the power to decree an adoption is purely statutory, the applicable statutes were complied with, and no appeal was taken. In further support of this position, counsel cites Kenning v. Reichel, 148 Minn. 433, 182 N. W. 517 (1921), which held under the circumstances of that case that an adoption decree could not be collaterally attacked. Kenning v. Reichel, *supra,* has no application, however, if by competent evidence it can be established that there was fraud in the procurement of the adoption decree. See, Annotation, 2 A. L. R. 2d 887, 897.

Respondent Stetson suggests that if time limitations in Rule 60.02, Rules of Civil Procedure, and Minn. St. 548.14 are found

applicable, the guardian should be permitted to act now or the right to challenge the adoption decree will be forever lost. In some jurisdictions a presumptive heir or next of kin of an adoptive parent is permitted to maintain a direct proceeding to have an adoptive decree revoked on the grounds of fraud or undue influence on the adoptive parent. See, Annotation, 2 A. L. R. 2d 887, 908. In any event, absent a showing that the interest of the ward would be advanced by an action by the guardian to vacate the adoption decree the county court has no jurisdiction to direct the guardian to bring such an action. The sole beneficiaries of an action to vacate the adoption decree, if successful, would be the presumptive heirs of Mrs. Schober. Therefore, we hold that the guardian cannot bring such an action nor can any costs thereof be chargeable to the estate of the ward.

### JOINT TENANCY ACCOUNT

Petitioner, relative to that portion of the order dealing with the joint tenancy account, submits that at a hearing held before the county court, the parties entered into a stipulation whereby the account has been taken over by the guardian, reinvested, and identified as held without prejudice to any right of any claimant. There is, therefore, no controversy over the use or control of the account. Again, there is no showing the interest of the ward would be advanced by any further action involving the account.

The guardian and Mrs. Stetson urge that litigation over the status of the account while Mrs. Schober is living is necessary to avoid the argument that the presumption provided in Minn. St. 528.04, that the funds on deposit in a joint account belong to the parties in proportion to the net contribution by each, disappears upon the death of one of the parties and is replaced by the presumption stated in § 528.05, that the sums remaining on deposit belong to the surviving party "unless there is clear and convincing evidence of a different intention * * *."

It is noted that the stipulation changes the status of the joint account. The fund is now deposited in the name of the guardian. Whether the statutory presumption would now apply to that

fund has not been raised by the parties. Nevertheless, the responsibility of overcoming the presumption is minor compared to exposing the ward's assets to the costs of litigation, particularly where no demand is made to the fund and the same is properly invested.

Writ made absolute.

MR. JUSTICE YETKA took no part in the consideration or decision of this case.