In the Matter of the CONSERVATOR-
SHIP OF Colleen Ann GELDERT,
Proposed Conservatee,

and

In the Matter of the Mental Deficiency
of Colleen Ann Geldert, Ward.

No. C3–00–921.

Court of Appeals of Minnesota.

Jan. 23, 2001.

Review Denied March 27, 2001.

David L. Kraker, David L. Kraker & Associates, Minneapolis, MN, for appellant Geldert.

Amy Klobuchar, Hennepin County Attorney, Lisa C. Hahn–Cordes, Assistant County Attorney, Minneapolis, MN, for re-

spondent Louise Ouradnik as agent of the Commissioner of Human Services.

Roger C. Clarke, Minneapolis, MN, for petitioner Lucy Melena.

Considered and decided by
PETERSON, Presiding Judge,
LANSING, Judge, and STONEBURNER, Judge.

## OPINION

LANSING, Judge

Colleen Ann Geldert is a mentally retarded adult who has been a ward of the Commissioner of Human Services since 1958. Geldert suffers from end-stage renal failure caused by polycistic kidney disease. Dialysis is the only treatment option available to Geldert at this time. In December 1999, Geldert's sister, who believes dialysis is not in her sister's best interests, petitioned to be appointed general conservator of Geldert's person for the express purpose of preventing her from undergoing dialysis. Geldert appeals from an order discharging the Commissioner of Human Services as guardian and appointing her sister as general conservator. We reverse and remand.

## FACTS

Colleen Ann Geldert has been a ward of the Commissioner of Human Services for the past 42 years. Geldert has the intellectual abilities of a first- or second-grader and requires supervision 24 hours per day. Although Geldert is unable to make informed choices about medical treatment, she has expressed thoughts and ideas that indicate she understands the difference between life and death and, on two occasions, has expressed the desire to live. Geldert lives at Dungarvin, a group home for disabled adults.

Geldert suffers from Prader Willi Syndrome (PWS). PWS is a disorder that prevents satiety. Persons afflicted with PWS, including Geldert, suffer from a range of behavioral difficulties including food seeking, aggression, obsessive-compulsive behavior, and problems with transitions and unanticipated changes. To manage Geldert's behavioral difficulties, the Dungarvin staff successfully implemented a positive-reinforcement plan that rewards Geldert for good behavior on an hourly basis. Geldert has not exhibited inappropriate aggressive behavior for some time.

Despite suffering from PWS, Geldert leads a full and active life, made possible in large part by Dungarvin's careful programming and well-trained staff. She participates in church events and goes to Sunday school. She enjoys bingo, bowling, movies, shopping, and going to casinos. She also enjoys puzzles and card games. She is friendly and talkative. She works as a housekeeper at a Super 8 Motel. She takes directives well and is considered a good worker. She likes and takes pride in her job.

In addition to PWS, Geldert suffers from end-stage renal failure caused by polycistic kidney disease. Geldert's illness is fatal without dialysis or a kidney transplant. Geldert's mother, brother, and two sisters, who have maintained contact with her through the years and have shown an unwavering commitment to her well-being, oppose dialysis as a treatment option. Geldert's family fears that dialysis will prevent Geldert from continuing to enjoy her daily life and will cause her to revert to aggressive behavior. Geldert's doctors believe that dialysis is a reasonable approach to Geldert's illness from a medical standpoint, but recognize that whether dialysis is in Geldert's best interests cannot be determined with any degree of certainty until dialysis is tried.

In an effort to foreclose dialysis as a treatment option, Lucy Melena, Geldert's older sister, petitioned to become conservator of Geldert's person. The district court granted Melena's petition, reasoning that Geldert's best interests would be served by the appointment of Melena as conservator of Geldert's person and that the public guardianship was no longer nec-

essary because an acceptable alternative was available. On appeal, Geldert claims the district court abused its discretion (1) in terminating the state's guardianship without a finding that the state has failed to perform the duties associated with the guardianship or to provide for her best interests, and (2) in finding that her interests will be better served by her sister as conservator, even though her sister's appointment precludes dialysis as a treatment option for Geldert.

## ANALYSIS

The district court has the authority to remove a guardian or conservator and to appoint a new guardian or conservator. Minn.Stat. § 525.61, subd. 3 (1998). The appointment of a conservator is a matter within the district court's discretion and will not be disturbed absent a clear abuse of that discretion. *In re Guardianship of Stanger*, 299 Minn. 213, 215, 217 N.W.2d 754, 755 (1974); *In re Guardianship of Dahmen's*, 192 Minn. 407, 410, 256 N.W. 891, 893 (1934). The removal of a guardian or conservator is also a matter within the district court's discretion. *See In re Conservatorship of Kocemba*, 429 N.W.2d 302, 307 (Minn.App.1988) (stating trial court has discretion in appointing successor conservator).

When considering whether to remove a guardian or conservator, the district court must consider "whether the existing guardian or conservator has performed the applicable duties and whether the continued appointment of the guardian or conservator is in the best interests of the ward or conservatee." Minn.Stat. § 525.61, subd. 3. The court must appoint a new guardian if it finds that (1) the existing guardian has failed to perform the duties associated with the guardianship or to provide for the best interests of the ward, and (2) the ward's best interests will be better served by the appointment of a new guardian. *Id.*

Geldert has been a ward of the Commissioner of Public Health since 1958.

In removing the commissioner as guardian, the district court did not consider, as Minn.Stat. § 525.61, subd. 3, requires, whether the commissioner had failed· to perform the duties associated with the guardianship or to provide for Geldert's best interests. Instead, the court applied the standard for appointing a guardian in the first instance, rather than the standard for removing an existing guardian and appointing a successor, and found only that Melena's appointment was in Geldert's best interests and that the public guardianship was no longer necessary because an acceptable alternative was available.

Melena argues that the court's failure specifically to consider Minn.Stat. § 525.61, subd. 3, is irrelevant because Minn.Stat. § 525.61 applies only to private guardianships created under Minn.Stat. §§ 525.539–.705 (1998). Public guardianships, Melena claims, are governed by the provisions of the Minnesota Mental Retardation Protection Act (MRPA), Minn.Stat. §§ 252A.01–.21 (1998). For two reasons, we disagree.

First, Minn.Stat. § 525.61, subd. 3, does not contain the limitation Melena proposes. It applies to the removal of "a guardian or conservator and [the appointment of] a new guardian or conservator." Minn.Stat. § 525.61, subd. 3. We decline to read a limitation into the statute that is neither expressly stated nor reasonably implied. Had the legislature intended to limit the application of the statute to private guardianships only, it could have done so. Second, the supreme court has held that despite the adoption of the MRPA, a public guardianship continues until it is terminated under the provisions of Minn. Stat. § 525.61. *In re Blilie*, 494 N.W.2d 877, 880 (Minn.1993). Similarly, in this case, Geldert's public guardianship continues until it is terminated under the provisions of Minn.Stat. § 525.61, subd. 3.

We recognize that public guardianship is viewed as the most restrictive form of guardianship and, as a matter of policy,

should be imposed only when no other acceptable alternative is available. Minn. Stat. § 252A.01, subd. 1(2)(b); *see also* Minn.Stat. § 252A.03, subd. 4 (directing commissioner to seek nonpublic guardians for developmentally disabled persons currently under public guardianship). But once a public guardianship has been established, the reasons for removal are a central consideration under Minn.Stat. § 525.61, subd. 3.

Because whether the Commissioner of Public Health failed to perform the duties associated with the guardianship or to provide for Geldert's best interests is a question for the district court in the first instance, we reverse and remand. The remaining issues Geldert raises involve significant public-policy concerns Minnesota courts have not previously addressed. But we decline to address them at this point, pending a determination by the district court on whether the state failed to perform the duties associated with the guardianship or to provide for Geldert's best interests.

## DECISION

The district court abused its discretion in terminating the state's guardianship without a finding that the state failed to perform the duties associated with the guardianship or to provide for Geldert's best interests.

**Reversed and remanded.**