In re the GUARDIANSHIP OF
Steven Bernard AUTIO.

No. A07–0595.

Court of Appeals of Minnesota.

April 22, 2008.

Matthew K. Begeske, John B. Schulte, Begeske Law Offices, Duluth, MN, for appellant Scot Autio.

Michael K. Kearney, Colosimo, Patchin, Kearney & Brunfelt, Ltd., Virginia, MN, for respondent, Steven Autio.

Melanie S. Ford, St. Louis County Attorney, Renae M. Darland, Assistant County Attorney, Virginia, MN, for respondent, St. Louis County.

Considered and decided by KALITOWSKI, Presiding Judge; MINGE, Judge; and CONNOLLY, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the order denying his petition for appointment as emergency guardian and establishing a public guardianship for his brother. Appellant claims that there is an appropriate, less-restrictive alternative to a public guardianship and that a family member is available to serve as guardian. Respondent disagrees and contends that appellant's challenge is untimely. Because appellant's appeal was timely and the district court did not abuse its discretion by establishing public guardianship for appellant's brother, we affirm.

## FACT

Appellant Scot Autio is the brother of Steven Bernard Autio, a 47-year-old man with autism and severe mental retardation. Steven has received institutional care since age 13. He is unable to meet his personal needs independently or care for himself without 24-hour supervision. Steven currently lives in a group home.

This matter arises out of a history of escalating conflict over Steven's medication and treatment regimen. Appellant and George Autio, Steven's father, have consistently disagreed with the professionals responsible for Steven's care and supervision, including St. Louis County Social Services staff and staff at the group home. Respondent is St. Louis County. George Autio served as guardian for his son until he was replaced by a public guardian by the district court on January 25, 2007.[1] Both appellant and George were members of a treatment team that was established at an earlier stage in this conflict. The team was charged with making decisions about Steven's care.

On April 17, 2006, appellant filed a petition requesting that he be appointed as emergency guardian for Steven. St. Louis County had previously submitted a letter to the Commissioner of the Minnesota Department of Human Services (commissioner) requesting that the commissioner accept nomination for appointment as public guardian for Steven. On May 25, 2006, the Public Guardianship Administrator of the Minnesota Department of Human Services consented to the nomination. Accordingly, the county filed a petition requesting removal of Steven's father as guardian, the establishment of a public guardianship, and the denial of appellant's petition for emergency guardianship. After a hearing on the competing petitions, the district court authorized the public guardianship, appointed the commissioner as guardian, and denied appellant's competing petition. This appeal follows.

## ISSUES

I. Is this appeal timely?

1. George Autio did not challenge his removal as guardian and is not a party to this appeal.

II. Did the district court abuse its discretion by appointing a public guardian for appellant's brother while simultaneously denying a family member's petition for emergency guardianship?

## ANALYSIS

### I.

The first issue is whether this appeal should be dismissed as untimely. On January 25, 2007, the district court issued its order establishing the public guardianship and denying appellant's motion for an emergency guardian.

The establishment of public guardianship for developmentally disabled adults is generally governed by Minn.Stat. §§ 252A.01–.21 (2006). The provision relied on by respondent county in challenging the timeliness of the appeal is Minn. Stat. § 252A.101, subd. 6, which states that a "copy of the [public guardianship] order shall be served by mail upon the ward . . . and the ward's counsel. The order must be accompanied by a notice that advises the ward . . . of the right to appeal the guardianship or conservatorship appointment *within 30 days*." (Emphasis added.) However, the statute also provides that appeals may be taken to the court of appeals in the manner prescribed by Minn. Stat. §§ 525.71–.731 (2006). Minn.Stat. § 252A.21, subd. 1. Section 525.712 provides for appeal pursuant to the rules of civil appellate procedure within six months after the filing of the appealable order, judgment, or decree unless a notice of filing is served by a party. The Minnesota Rules of Civil Appellate Procedure require that an appeal be taken within 60 days after the entry of judgment or 60 days after service by a party of notice of filing of an appealable order, unless otherwise provided by statute. Minn. R. Civ.App. P. 104.01, subd. 1.

We acknowledge the confusion that the various provisions just identified create for parties attempting to determine the time for appeal. In this case, the confusion was compounded. On January 26, 2007, the district court sent appellant a "Notice of Entry of Order and Right to Appeal" stating "[y]ou have a right to appeal the Order within 60 days from the date of this notice." Appellant filed his notice of appeal on March 19, 2007, within 60 days after entry of the order. Respondent claims that this appeal must be dismissed because appellant failed to file within the 30 days referred to in Minn.Stat. § 252A.101, subd. 6.

The notice provision in Minn.Stat. § 252A.101, subd. 6, refers to an appeal period inconsistent with the time period established by Minn.Stat. § 525.712 and Minn. R. Civ.App. P. 104.01, subd. 1. Although specific to public guardianships, the 30-day notice provision in Minn.Stat. § 252A.101, subd. 6, does not reflect any legislative intent to establish a time limit for taking an appeal; it simply refers to the contents of a required notice. The subdivision creates confusion because of its departure from the appeal periods established in Minn.Stat. § 525.712 and Minn. R. Civ.App. P. 104.01, subd. 1. We conclude that those provisions govern the time of appeals. Because Minn.Stat. § 525.712 allows six months after the filing of an order unless a party serves written notice of filing,[2] because the order was filed on January 26, 2007, because no party served a notice of filing, and because the appeal

---

2. Although the district court sent the parties notice of filing and entry of the order, it does not appear that either party filed a notice. Even if one of the parties had immediately served a notice of filing, this appeal would be timely because it was filed within 60 days after the date of filing.

was filed within six months after the date of filing, we hold that this appeal is timely.

## II.

■ The second issue is whether the district court abused its discretion by appointing a public guardian for Steven while simultaneously denying appellant's petition for emergency guardianship. Appellant contends that the district court should have granted his petition to serve as guardian for Steven because family members are entitled to priority in guardianship proceedings and because his appointment would have represented a less-restrictive alternative to public guardianship.

■ The appointment of a guardian is a matter within the discretion of the district court and will not be disturbed absent a clear abuse of that discretion. *In re Conservatorship of Geldert*, 621 N.W.2d 285, 287 (Minn.App.2001), *review denied* (Minn. Mar. 27, 2001) (citing *In re Guardianship of Stanger*, 299 Minn. 213, 215, 217 N.W.2d 754, 755 (1974), and *In re Guardianship of Dahmen's*, 192 Minn. 407, 410, 256 N.W. 891, 893 (1934)). Before a district court is presented with a petition for public guardianship, Minnesota law generally requires that the commissioner and the petitioner consider whether qualified family members are willing to assume guardianship. *See* Minn.Stat. §§ 252A.03, subd. 4, .06, subd. 2(6). "Public guardianship or conservatorship is the most restrictive form of guardianship or conservatorship and should be imposed only when no other acceptable alternative is available." Minn.Stat. § 252A.01, subd. 1(b). The district court must find that "no appropriate alternatives to public guardianship ... exist that are less restrictive of the person's civil rights and liberties...." Minn.Stat. § 252A.101, subd. 5(4). The district court must also recognize the priority for cur-

rent caretakers, adult children, and parents of proposed wards when considering guardianship appointment. Minn.Stat. § 524.5–309(a)(1), (4), (5) (2006). A district court, however, need not appoint a family member as guardian if it determines that the best interests of the proposed ward will not be served by appointing the family member. *See* Minn.Stat. § 524.5–309(b). "The best interests of the ward should be the decisive factor in making any choice on his behalf." *In re Guardianship of Schober*, 303 Minn. 226, 230, 226 N.W.2d 895, 898 (1975) (quoting *In re Guardianship of Overpeck*, 211 Minn. 576, 583, 2 N.W.2d 140, 144 (1942)).

Dr. Randall Lakosky, Steven's primary treating physician since 2001, testified that Steven is currently treated with medications to alleviate his agitation and anxiety and stabilize his mood. Dr. Lakosky noted that he initially stopped prescribing Prozac at George Autio's request, but Steven subsequently engaged in a variety of self-injurious behaviors. Dr. Lakosky testified that Steven is happier, is more social, and engages in less self-injurious behavior under the current treatment plan than under earlier, less-aggressive treatment plans. He further testified that Steven's quality of life would markedly deteriorate if the medications were discontinued. Dr. Lakosky stated that, based on his experience with Steven's father and appellant, he believed that appellant would reduce or eliminate prescription drugs from Steven's treatment regimen, which would result in Steven experiencing greater agitation and a regression to prior behavior, such as self-injury, striking others, and attempting to ingest inedible objects.

Appellant and his father strongly disagree with Dr. Lakosky. Aside from his own opinion testimony, however, appellant presented no medical evidence contradicting or challenging Dr. Lakosky's expert

testimony at trial. Appellant has no medical degree or training.

The record supports the district court's finding that appellant would like to see his brother's medications reduced or discontinued. At trial, appellant suggested the alternative treatment of his brother at a new autism center in Duluth and offered the testimony of the director of the facility. The district court noted that, although the director of the facility had experience working with autism, the director did not have a medical degree and did not meet or assess Steven before the trial. The district court found that appellant's proposed treatment plan included alternative medicines with no established efficacy or evidence that they would be appropriate for Steven's condition.

The record indicates that, in addition to disagreements over medication, appellant and his father engaged in obstructive, harassing, and threatening behavior with group-home staff and treatment professionals, and their conduct interfered with Steven's treatment and weighed against appellant serving as a guardian. To facilitate a cooperative approach to making treatment decisions, a treatment team was created that included appellant, his father, staff at the group home, Steven's social worker, and, to resolve differences of opinion, an employee of the Disability Law Center. The district court found that the father and appellant harassed this deadlock-breaking member to the point that she obtained a restraining order to protect herself from their offensive conduct and ultimately withdrew from further participation with the team. As a result of the conduct of appellant and his father, they were excluded from treatment meetings and restricted to written and facsimile contact with treatment staff and professionals.

The record further indicates that appellant and Steven's father had visited with Steven away from the group home. According to the record, during the last such visit, appellant and his father gave Steven a beverage and hotdog, in violation of visitation rules. When a staff member realized what had happened, the staffer attempted to end the visit. Appellant and his father became upset and pushed the staff person away, and appellant began screaming that Steven was choking and to call 911. A staff member testified that Steven had finished eating the food 15 minutes before appellant's outburst. An emergency vehicle arrived in response to the 911 call and transported Steven to a hospital emergency room, where medical staff determined that there was nothing wrong with him except wax buildup in his right ear. The district court found that George Autio and appellant engaged in similar conduct toward all group-home staff.

The district court found that Steven's overall well-being has improved under his current treatment regimen; that Steven's condition would deteriorate if the treatment plan was altered; that appellant would likely change his brother's current treatment regimen; that appellant's past interference with Steven's treatment in the form of harassing and threatening behavior toward treatment staff and professionals rendered appellant an inappropriate guardian; and that appointing a family member as guardian was not in Steven's best interests.

We conclude that the record in this proceeding overwhelmingly supports the district court's determination that there is no appropriate alternative to public guardianship that is less restrictive of the civil rights and liberties of Steven; that appellant should not serve as a guardian; that there is no other qualified family member available to serve as guardian; that it is in Steven's best interests to have an unbiased

third party supervising his future care; and that the commissioner should serve in this role.

## DECISION

We hold that appellant's appeal was timely under Minn.Stat. §§ 252A.21, subd. 1, 525.712. Furthermore, because the record supports the district court's determination that it is in the best interests of Steven to appoint an unbiased third party to serve as guardian, and there exists no appropriate, less-restrictive alternative to appointing the commissioner, we conclude that the district court did not abuse its discretion in establishing public guardianship for Steven and denying appellant's competing petition to serve as his emergency guardian.

**Affirmed.**