*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0474**

In re the Guardianship and/or
Conservatorship of Heidi Anne Vizuete
and
In re the Marriage of Miriam Rose Vizuete,
Respondent,

vs.

Edison Marcello Vizuete,
Appellant.

**Filed February 2, 2015**
**Affirmed**
**Reyes, Judge**

Washington County District Court
File Nos. 82PR113715; 82F798003928

Edison Vizuete, St. Paul, Minnesota (pro se appellant)

Timothy T. Ryan, Chisago City, Minnesota (for respondent Heidi Vizuete)

Eric Bjerva, Guzman Law Firm, Apple Valley, Minnesota (for respondent Miriam Vizuete)

Considered and decided by Worke, Presiding Judge; Reyes, Judge; and Crippen, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

In this appeal following remand, pro se appellant challenges the district court's order appointing respondent as the unlimited guardian of the parties' 20-year-old child and appellant as the limited co-guardian. Appellant argues that the district court erred by (1) misapplying the guardianship statute and appointing a guardian that "reduced" appellant's parental rights; (2) appointing a guardian without holding an additional evidentiary hearing on remand; (3) granting a motion to transfer venue of related family court proceedings; (4) declining to address appellant's motion for parenting-time assistance; (5) failing to remove itself for bias; (6) ignoring appellant's request for the appointment of a guardian ad litem; (7) granting respondent publicly financed legal counsel; and (8) failing to address appellant's request for attorney fees. We affirm.

## FACTS

### I. Background

This appeal arises from competing guardianship petitions filed by divorced parents. In 2011, respondent Miriam Vizuete, the mother of the proposed ward, Heidi Vizuete (Heidi), filed a petition for her appointment as Heidi's guardian. The petition claimed that "[Heidi] has been diagnosed with mild to moderate cognitive disability" and requires a guardian to manage her day-to-day affairs. Heidi is autistic with an IQ in the range of 61-64. At that time, appellant Edison Vizuete, Heidi's father, also filed a petition seeking his appointment as Heidi's guardian under the guardianship statute. Appellant later filed an amended petition seeking his appointment as a limited guardian

2

and conservator, asserting that respondent is not qualified to manage Heidi's estate. Although the parties initially agreed that a guardian was needed, their petitions differ as to the extent of powers and duties that should be granted to the guardian.[1]

## II. The evidentiary hearing

Following the filing of the parties' petitions, the district court held a two-day evidentiary hearing. Heidi's social worker, who has worked with her since 2001, testified at the hearing that he observed respondent "to be very caring and nurturing" toward Heidi. He stated that appellant "wasn't really involved until 2008, but since that time he has been very actively involved and wanting to be involved as much as possible." The social worker testified that, after Heidi turned 18 years old in November of 2011, he was required to work with her directly, or her legal guardian. Even though appellant wanted access to Heidi's records relating to her participation in county services, appellant needed to get Heidi's approval. Respondent testified that the same restriction applied to her if she wanted access to Heidi's records.

At the time of the hearing, Heidi was an 18-year-old senior in high school and had been living with respondent her whole life. Pursuant to the divorce decree, the parties were awarded joint legal custody, and respondent was awarded sole physical custody of the minor children with a parenting-time schedule. Heidi testified that respondent helps

---

[1] Specifically, respondent's petition sought all powers and duties enumerated under the guardianship statute, Minn. Stat. § 524.5-313(c)(1)–(7) (2014), while appellant sought limited powers, only as to Minn. Stat. § 524.5-313(c)(1)–(4) and Minn. Stat. § 524.5-313(c)(6). Because the law is unchanged from the time the petitions were filed in 2011, we cite to the current version of the statute. *See McClelland v. McClelland*, 393 N.W.2d 224, 226–27 (Minn. App. 1986).

3

her accomplish domestic tasks that she is unable to do on her own. Heidi does not have a driver's license and does not go shopping without an adult. Heidi testified that she is able to manage her checking account online with help from respondent. Heidi is in favor of the appointment of respondent as her guardian because she believes respondent looks out for her best interests. Heidi testified that she did not want to see appellant because she could not handle his "anger issues" and because he did not tell her that he also filed a petition to become her guardian.

Appellant testified that he continues to pay child support. He testified that an independent person must manage the aspects of Heidi's finances that she is unable to manage on her own. However, appellant also stated that Heidi's savings and checking accounts are not substantial and that she is capable of protecting her existing personal property.

Heidi's older sister, M.Z., lived with Heidi and respondent between 2008 and 2010 and for a period of time in 2011. M.Z. testified that she became estranged from appellant in October 2010 after a series of confrontations but has had a consistent relationship with respondent, who has always provided her with care. She has had no indication that respondent has ever financially exploited Heidi and has also indicated that respondent has always acted in favor of Heidi's best interests. M.Z. testified that respondent has minimal property aside from personal effects and income from a part-time job. Heidi's other older sister, A.D., provided testimony similar to M.Z.'s at the hearing. She was also supportive of respondent's appointment as guardian.

4

### III. The district court's initial order

On May 21, 2012, the district court appointed respondent as Heidi's sole, unlimited guardian, and denied appellant's request to be appointed as guardian and conservator. In its order, the district court found that respondent had custody of Heidi and has been her primary caregiver since 1998. The district court found that Heidi would likely continue to reside at respondent's home regardless of the outcome of the proceedings. The district court's findings noted Heidi's lack of "sufficient understanding or capacity to make or communicate responsible decisions concerning her person," as well as her deficient understanding of money; her ability to read and write at a middle-school level, her "short-term memory issues;" her disposition to frequently forget and lose items; and the fact that she "is overly trusting, vulnerable to exploitation by others, and requires supervision in order to live safely." The findings also stated that "Heidi's demonstrated needs cannot be met with less restrictive means," and that she "has ongoing educational, medical, vocational, recreational, and other needs that require continuing supervision and assistance from someone with authority to make decisions on her behalf." Appellant appealed this decision.

### IV. The appeal

On appeal, appellant argued, inter alia, that the district court lacked jurisdiction to interfere with the custody of Heidi while she was a minor, and that the guardianship order reduced his parental rights. *In re Guardianship of Vizuete*, No. A12-1279, 2013 WL 3368334, at *2 (Minn. App. July 8, 2013), *review denied* (Sept. 17, 2013) (*Vizuete I).*

This court agreed with appellant. *Vizuete I*, 2013 WL 3368334 at \*3. We determined that the record supported the district court's conclusion that Heidi is an incapacitated person within the meaning of the guardianship statute, and that the district court "did not abuse . . . [its] discretion in so finding." *Id.* at \*4. However, we also determined that the record supported a finding that Heidi was still a child within the meaning of chapter 518 and 518A, and that therefore "any modification of [appellant's] parental rights should have been governed by those chapters." *Id.* at \*3. In so holding, we noted that the "duly-established custodial arrangement between appellant and respondent is incompatible with the appointment of respondent as the sole guardian." *Id.* We explained that while,

> [w]e do not intend to imply that Minnesota law disallows the appointment of a sole guardianship for a ward over whom parents exercise custodial rights[,] [t]he [Uniform Guardianship and Protective Proceedings Act] cannot be used to completely or substantially abrogate existing custodial rights over the objection of a custodial parent.

*Id.* at \*7.

We reversed the decision and remanded to the district court "for consideration of the competing guardianship petitions in light of the current custodial arrangement between the parties and the requirements for modification of appellant's legal custody under chapter 518." *Id.*

## V. On remand

After remand, appellant filed a motion for parenting-time assistance on October 30, 2013. Respondent moved to transfer venue of the parties' family proceedings to

6

Washington County, and appellant opposed the transfer of venue. The Dakota County District Court granted the motion on December 5, 2013.[2] The district court found that appellant had not been working in Washington County for several years and that neither party resided in Dakota County. Because the "issues and concerns of the parties, as well as the issue remanded to Washington County are inextricably interwoven," the district court determined that "the interests of judicial economy justify a change of venue to Washington County."

On December 26, 2013, respondent filed a motion in Washington County District Court to modify her legal custody of Heidi from joint legal custody to sole legal custody. To support her motion, respondent alleged that appellant's multiple attempts to gain access to Heidi's medical and educational records caused Heidi stress and anxiety. She also asserted that Heidi does not wish to have contact with appellant. Appellant opposed respondent's request for modification.

## VI. The district court's second order

In an order filed on January 21, 2014, the district court addressed respondent's motion to modify custody and appellant's pending motion for parenting-time assistance. The district court denied respondent's motion, finding that respondent failed to establish a prima facie basis to modify custody. The district court determined that allegations

---

[2] The parties' initial petition for dissolution was filed in Washington County. The matter was transferred to Dakota County on June 30, 2000, following a motion by appellant. The motion was granted because at that time appellant was employed by Washington County in a high-level administrative position. From June of 2000 until 2013, all of the parties' proceedings related to their family matters were heard in Dakota County. Respondent resides in Washington County.

7

made by respondent did not rise to the level of significant change in circumstances that have caused endangerment to Heidi's physical or emotional well-being. As a result, the district court ordered that the parties continue to share legal custody of Heidi. With respect to appellant's motion for parenting-time assistance, the district court denied the motion because it determined that it lacked jurisdiction since the motion was filed after Heidi attained the age of majority.

In a separate order filed simultaneously, the district court issued its decision in the guardianship proceedings. The district court noted that, even though its previous guardianship order was reversed and remanded, the court of appeals "did not call into doubt [it's] findings . . . supporting the basis for the guardianship of [Heidi]." The district court reaffirmed its findings that "clear and convincing evidence . . . demonstrated that [Heidi] is an incapacitated person" and that "no appropriate alternative to guardianship exists that is less restrictive of Heidi's civil rights and liberties." The district court explained that, because there was no basis to modify the parties' current custodial arrangement, it would evaluate the competing guardianship petitions in light of the parties' respective custodial rights and under the best-interest-of-the-child standard.

The district court concluded that it was in Heidi's best interest to appoint respondent as a guardian with unlimited guardianship powers and appellant as a co-guardian with limited powers "with respect to any major decisions affecting Heidi." The district court explained that its appointment of respondent as the unlimited guardian and appellant as the limited co-guardian "would not negate either party's custodial rights and would serve the best interests of Heidi." This appeal followed.

8

**D E C I S I O N**

### I. Appointment of guardian

Appellant first challenges the district court's guardian appointments for Heidi, arguing that the appointments effectively "reduced" appellant's parental rights. Appellant argues that the district court abused its discretion absent a showing that Heidi's needs are not being met under the current custody arrangement. A district court's guardian appointment is reviewed for an abuse of discretion. *In re Guardianship of Wells*, 733 N.W.2d 506, 509 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007). In doing so, the reviewing court shall not interfere with the exercise of this discretion except in the case of clear abuse. *In re Guardianship of Kowalski*, 478 N.W.2d 790, 792 (Minn. App. 1991), *review denied* (Minn. Feb. 10, 1992).

Under the guardianship statute, "[a] court may appoint a limited or unlimited guardian for a respondent only if it finds by clear and convincing evidence that: (1) the respondent is an incapacitated person [3] and (2) the respondent's identified needs cannot be met by less restrictive means, including the use of appropriate technological assistance." Minn. Stat. § 524.5-310(a) (2014). But "the court shall grant to a guardian only those powers necessitated by the ward's limitations and demonstrated needs and, whenever feasible, make appointive and other orders that will encourage the development

---

[3] "'Incapacitated person' means an individual who, for reasons other than being a minor, is impaired to the extent of lacking sufficient understanding or capacity to make or communicate responsible personal decisions, and who has demonstrated deficits in behavior which evidence an inability to meet personal needs for medical care, nutrition, clothing, shelter, or safety, even with appropriate technological assistance." Minn. Stat. § 524.5-102, subd. 6 (2014).

9

of the ward's maximum self-reliance and independence." Minn. Stat. § 524.5-310(c) (2014). "The best interests of the ward should be the decisive factor in making any choice on [her] behalf." *In re Guardianship of Autio*, 747 N.W.2d 600, 603 (Minn. App. 2008) (quotation omitted).

On remand, the district court incorporated the findings from its initial order. In accordance with our instructions, the court properly analyzed the competing guardianship petitions in light of the current custodial arrangement. The district court also found that Heidi was incapable of independently exercising the following rights and powers: (1) to establish her place of abode within or without the state; (2) to provide for her care, comfort, and maintenance needs; (3) to take reasonable care of her clothing, furniture, vehicles, and personal effects; (4) to give any necessary consent to enable, or to withhold consent for her to receive necessary medical or other professional care, counsel, treatment, or advice; (5) to approve or withhold approval of any contract, except for necessities, which she may make or wish to make; and (6) to apply on her behalf for any assistance, services, or benefits available to her through any unit of government. The district court concluded that it was in Heidi's best interest to appoint a guardian. Based on the parties' custodial arrangement and the necessity of a legal guardian for Heidi, the district court appointed respondent as unlimited guardian and appellant as limited, co-guardian of Heidi.

The district court appointed guardianship powers that mirror the parties' custodial rights so as to not negate either party's rights. Appellant's rights as a limited, co-guardian "with respect to any major decisions" affecting Heidi are consistent with the

10

rights he continues to enjoy as a parent with joint legal custody. The district court properly considered Heidi's guardianship in light of the parties' custodial rights as we directed. Thus, the district court did not abuse its discretion by appointing a guardianship for Heidi that is in her best interest and that does not abrogate either party's custodial rights under their preexisting and current arrangement.

Appellant also challenges the extent of the powers granted to respondent. Appellant asserts in his petition, as he did in his previous appeal, that Heidi is very independent and needs minimal supervision. But the record demonstrates that Heidi does not have the capacity to establish her own residence, has limited ability to complete daily activities on her own, and has limited ability to manage her finances and comprehend medical needs. These needs are all implicated by the powers enumerated in section 524.5-313(c)(1)–(7). The district court did not abuse its discretion by awarding all the powers set forth in the guardianship statute.[4]

## II.    Request for second evidentiary hearing on remand

Appellant next argues that the district court abused its discretion by failing to hold an additional evidentiary hearing on remand. *See* Minn. Stat. § 524.5-304(a) (2014) ("Upon receipt of a petition to establish a guardianship, the court shall set a date and time for hearing the petition . . . ."); Minn. Stat. § 524.5-307 (2014) ("The petitioner and respondent may present evidence and subpoena witnesses and documents; examine

---

[4] Appellant also argues that his appointment as limited co-guardian will "preclude" him from being able to file the annual report required by Minn. Stat. § 524.5-316 (2014). However, appellant cites no legal authority and any argument in this regard is premature in this appeal.

11

witnesses, . . . and otherwise participate in the hearing."). However, the record shows that the district court previously held a two-day evidentiary hearing wherein the parties had the opportunity to present their evidence and examine witnesses. Moreover, the district court's previous order appointing guardianship included detailed findings of fact based on the evidence and testimony presented at the hearing and this court's prior opinion did not require the district court to hold an evidentiary hearing on remand. The district court did not err by declining to hold a second evidentiary hearing on remand.

### III. Respondent's motion to transfer venue of the parties' family file from Dakota County to Washington County

Appellant argues that the district court abused its discretion by granting respondent's motion for a change of venue. The district court has the authority to change venue "when the convenience of the parties or the ends of justice would be promoted by the change." Minn. Stat. § 518.09 (2014). The district court's decision on a motion for a change of venue in a family law case is reviewed for an abuse of discretion. *Toughill v. Toughill*, 609 N.W.2d 634, 642 (Minn. App. 2000).

The district court did not abuse its discretion by granting respondent's motion for a change of venue. First, the proceedings that took place in the parties' family file were relevant to the district court's review and are consistent with what we directed the district court to consider on remand. Second, the conflicts presented by appellant's employment with Washington County are no longer at issue as appellant's employment there ended over eight years ago. Third, neither party resides in Dakota County. For these reasons,

12

the district court did not abuse its discretion by transferring the parties' family proceedings to Washington County.

**IV.    Appellant's motion for parenting-time assistance**

Appellant's fourth argument appears to challenge the district court's decision denying his motion for parenting-time assistance. Specifically, appellant seems to argue that the district court erred by applying a different definition of the term "child" to the parenting-time statute than to the statute relating to child custody. Interpretation of a statute presents a question of law, which is reviewed de novo. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011).

Relying on Minn. Stat. § 518.175 (2014), the district court determined that it did not have the authority to address appellant's motion for parenting-time assistance once Heidi reached the age of majority. The relevant portion of section 518.175, subdivision 1 that the district court cites provides:

> In all proceedings for dissolution or legal separation subsequent to the commencement of the proceedings and *continuing thereafter during the minority of the child*, the court shall, upon the request of either parent, grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child.

Minn. Stat. § 518.175, subd. 1 (emphasis added).

A "minor" is defined as "an individual under the age of 18." Minn. Stat. § 645.451, subd. 2 (2014); *see also* Minn. Stat. § 645.45(14) (2014). "Minority" is defined as meaning "with respect to an individual the period of time during which the

13

individual is a minor."[5] *Id.*, subd. 4 (2014). Thus, "during the minority of the child" as used in section 518.175, subdivision 1, does not encompass Heidi once she attained the age of majority, despite the fact that she remains a "child" as defined in Minn. Stat. § 518A.26, subd. 5 (2014). *Cf. Rew v. Bergstrom*, 845 N.W.2d 764, 782 (Minn. 2014) (interpreting the phrase "minor children" in the context of constitutional challenges to an order for protection, to apply only until the child reaches the age of 18, at which point the child will no longer be a minor).

Alternatively, appellant argues that the district court failed to address his motion for parenting-time assistance which was filed before Heidi turned 18 years old. However, appellant filed this document in Washington County as a part of the parties' guardianship proceeding. At that time, the parties' family file was still in Dakota County. Thus, the motion appellant relies on was not filed before the proper court. "Although some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). Because the motion was not properly before the Washington County District Court, that district court did not err in not addressing appellant's motion.

---

[5] Minn. Stat. § 645.451, subd. 1 (2014), provides that "[t]he terms defined . . . shall have the meanings given them for the purpose of any statute or law of this state now in force, for the purposes of any statute or law hereinafter enacted unless a different meaning is specifically attached to the terms or the context clearly requires different meaning."

**V.     Appellant's motion to remove the district court judge for bias**

Appellant argues that the district court erred by failing to recuse itself for bias and prejudice.  Whether a district court should recuse itself from a case is discretionary with the district court.  *Carlson v. Carlson*, 390 N.W.2d 780, 785 (Minn. App. 1986), *review denied* (Minn. Aug. 20, 1986).  A reviewing court will not reverse absent a clear abuse of discretion.  *Id.*

The record shows that appellant did not timely file his notice to remove the newly assigned judge from the proceedings.  Minn. R. Civ. P. 63.03 requires a party to file a notice to remove a judge "within ten days after the party receives notice of which judge . . . is to preside at the trial or hearing, but not later than the commencement of the trial or hearing."  The rule also prohibits a party from filing a notice against a judge "who has presided at a motion or any other proceeding of which the party had notice."  Minn. R. Civ. P. 63.03.  The parties received a notice of a review hearing on September 17, 2013, that indicated the matter would be before the judge that appellant later sought to remove.  A review hearing took place before that judge on September 27, 2013.  On October 29, 2013, a second notice was sent to the parties to inform them that the guardianship proceeding was reassigned to that same judge.  Appellant did not file a motion seeking removal of the Washington County District Court judge until December 12, 2013.  Thus, appellant's motion was untimely.

Moreover, appellant has not made an affirmative showing of prejudice to overcome the untimeliness of his notice.  *See* Minn. R. Civ. P. 63.03 ("A judge . . . who has presided at a motion or other proceeding . . . may not be removed except upon an

15

affirmative showing of prejudice.").  In his motion, appellant asserted that the judge exhibited bias by: (1) ignoring appellant's request for the appointment of a guardian ad litem; (2) granting respondent publicly financed representation and not affording the same benefit to appellant; and (3) failing to address appellant's request for attorney fees. As will be discussed below, these arguments have either been waived or lack merit. Accordingly, appellant did not meet his burden of showing prejudice.

## VI.    Guardian ad litem

Appellant argues that the district court erred by failing to appoint a guardian ad litem for Heidi.[6]  This argument has been waived on appeal because neither party requested the appointment of a guardian ad litem prior to this appeal.  *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *In re Conservatorship of Foster*, 535 N.W.2d 677, 684 (Minn. App. 1995), *aff'd*, 547 N.W.2d 81 (Minn. 1996).[7]

## VII.   Publicly financed legal counsel for Heidi and respondent, and appellant's request for attorney fees

Appellant argues that the district court was biased and abused its authority by appointing legal counsel for Heidi, who he asserts did not appropriately represent Heidi. He also argues that the district court exhibited bias by qualifying respondent as in forma pauperis (IFP) and by appointing respondent legal counsel given his assertion that she

---

[6] Appellant made this argument in his previous appeal.  Because we reversed and remanded for other reasons, we did not address this argument.

[7] Appellant argues that his motion filed on September 30, 2011, entitled "Petition for an Injunction Not to Interfere With Parental Rights," was a request for a guardian ad litem. A review of the document reveals that there is nothing indicating, either in form or in substance, that appellant was requesting the appointment of a guardian ad litem. Moreover, appellant himself characterized this document as a motion for parenting-time assistance.

16

earns over $66,000 per year.  Finally, appellant requests that this court grant appellant attorney fees in the amount of $15,000.  Because appellant fails to cite any legal authority in support of these arguments, they are waived.  *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation).

**Affirmed.**