*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0120**

In re Guardianship of Charles Rottelo, Ward.

**Filed December 7, 2015
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-GC-PR-14-201

Joseph Rottelo, Isanti, Minnesota (pro se appellant)

Susan R. Buckley, St. Paul, Minnesota (for respondent Charles Rottelo)

Ruth Y. Ostrom, Minneapolis, Minnesota (for respondent Ray Camper)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant argues that the district court abused its discretion when it appointed a non-family member to be the guardian for his brother, Charles. We affirm.

## FACTS

This case concerns the appointment of a guardian for Charles Rottelo. Charles has been diagnosed with schizophrenia, bipolar disorder, and a developmental disability. He

lacks the ability to manage his own affairs, recognize safety issues, shop for himself, or understand a contract.

In 2002, Charles was convicted of first-degree criminal sexual assault with a minor. He was released from prison on January 28, 2010, and placed on parole for five years.[1] Following his release, Charles moved into an adult foster-care facility run by GDC Health Services. GDC's members supervise and help Charles on a 24-hour basis. As a consequence of his conviction, Charles must register as a sex offender for the rest of his life.

On May 14, 2014, Ray Camper, one of Charles's case managers, petitioned the district court to appoint a guardian for Charles. Camper proposed Aaron Symicek to serve in that role. Appellant Joseph Rottello, Charles's brother, was notified of the proceedings and appeared at the initial hearing. Joseph subsequently filed written objections and a petition to have himself appointed as guardian. No other guardians were proposed to, or considered by, the district court.

A trial took place on November 13, 2014. There were two issues: (1) whether a guardian should be appointed and (2) who is best suited to serve as guardian. The district court heard testimony from several witnesses, including: Joseph's fiancé; Symicek; Camper and another GDC employee; Charles's parole agent; Charles's mental-health counselor; and Angelo Rottelo, another brother of Charles. Joseph attended trial but did not testify.

---

[1] His parole has since expired.

Joseph's fiancé testified that Joseph and Charles spoke nearly every week on the phone during the period that Charles was in prison. After Charles was released, Joseph briefly lost track of him, but eventually located Charles at GDC. Joseph had not visited Charles since finding him there. Joseph's fiancé stated that one of the reasons that Joseph does not visit Charles is because he has an acrimonious relationship with the GDC staff.

The district court also considered Symicek as a potential guardian. Symicek is not related to Charles. He works full-time at a software company and part-time at a real estate agency, insurance agency, and police department. Symicek met Charles at GDC because he serves as a guardian for another individual who lives there. Charles asked throughout the proceedings for Symicek to become his guardian instead of a family member. Symicek testified that he is willing to take on the responsibilities of being a guardian. In addition, Symicek passed the required background check.

The district court appointed Symicek to be Charles's guardian. In its order, the district court made five findings in support of its determination that Joseph is not the best candidate for guardian, including: (1) Joseph does not have a good working relationship with GDC; (2) conversations that Joseph taped between GDC, Charles, and himself demonstrated that he is not the best person to serve as guardian; (3) Joseph did not demonstrate an appropriate understanding of the terms and conditions of Charles's release and status as a sex offender; (4) he has not obtained the background check that is required to be a guardian; and (5) Charles expressed his preference for a non-family member to serve as guardian.

The district court made two findings supporting its determination that it is in Charles's best interests to appoint Symicek as his guardian: (1) Symicek is trained as a police officer and would therefore understand the terms and conditions of Charles's release and be able to work with Charles's parole agent and (2) Charles requested that a non-family member be appointed. This appeal follows.

**DECISION**

**I.**

Joseph argues the district court erred in its decision to appoint Symicek instead of himself. As the appellate court, our review is limited. "The appointment of a guardian is a matter within the discretion of the district court and will not be disturbed absent a clear abuse of that discretion." *In re Guardianship of Autio*, 747 N.W.2d 600, 603 (Minn. App. 2008). We do not stand in a position to retry the case and assess the evidence as the district court did. *See Grant v. Malkerson Sales, Inc.*, 259 Minn. 419, 424-25, 108 N.W.2d 347, 351 (1961) (explaining that even when there is conflicting evidence and the appellate court "might find the facts to be different" if it were the fact-finder, that is not its role). "A reviewing court is limited to determining whether the district court's findings are clearly erroneous, giving due regard to the district court's determinations regarding witness credibility." *In re Guardianship of Wells*, 733 N.W.2d 506, 510 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007). "If there is reasonable evidence to support the [district] court's findings of fact, a reviewing court should not disturb those findings." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

Minnesota's Uniform Probate Code governs the priority of individuals who can serve as guardians to a ward. *See* Minn. Stat. § 524.5-309 (2014). The statute requires the district court "in appointing a guardian" to "consider persons otherwise qualified in the following order of priority: . . . (7) an adult who is related to the respondent by blood, adoption, or marriage; and (8) any other adult or a professional guardian." Minn. Stat. § 524.5-309(a)(7)-(8).

The statutory priority order does not always have to be followed. A district court retains a considerable amount of discretion: "The court, acting in the best interest of the respondent, may decline to appoint a person having priority and appoint a person having a lower priority or no priority." Minn. Stat. § 524.5-309(b). "'The best interests of the ward should be the decisive factor in making any choice on his behalf.'" *Autio*, 747 N.W.2d at 603 (quoting *In re Guardianship of Schober*, 303 Minn. 226, 230, 226 N.W.2d 895, 898 (1975)). Although a family member is higher on the priority list, "[a] district court . . . need not appoint a family member as guardian if it determines that the best interests of the proposed ward will not be served by appointing the family member." *Id*.

Joseph contends that some of the district court's findings of fact are clearly erroneous and that the district court abused its discretion. Specifically, Joseph argues that the following findings are clearly erroneous:

> 8) The evidence indicates that Joseph Rottelo has not established a good working relationship with [Charles's] current care givers. The taped conversations presented by Joseph Rotello indicate that Joseph Rotello would not be an appropriate person to serve as a guardian. Joseph Rotello did not demonstrate an appropriate understanding of the terms and

5

conditions of [Charles's] parole and status as a registered sex offender.

9) Joseph Rotello has not obtained the required background check to qualify for appointment as a guardian.

10) [Charles] does not want a family member to be appointed guardian, but desires that Aaron C. Symicek be appointed as his guardian.

11) Aaron C. Symicek's training as a police officer indicates that Mr. Symicek would have the necessary skills to appropriately work with [Charles's] parole officer, and to ensure that the terms and conditions of [Charles's] registration as a sex offender are appropriately met.

Regarding finding 8, Joseph argues that the taped conversations between himself, Charles, and the GDC staff do not establish that he would be inappropriate as a guardian for Charles. The district court listened to the tapes and made the finding based on its interpretation of what was said and how it was said. Throughout the tapes, Joseph became upset with Charles and repeatedly yelled "Chuck!" Joseph also became upset with GDC staff. Having listened to the tapes, we conclude that the district court's finding that Joseph is not an appropriate choice for guardian is well-supported.

Joseph also takes issue with the last sentence in finding 8, arguing that there is no reasonable evidence to support the finding that he "did not demonstrate an appropriate understanding of the terms and conditions of [Charles's] parole and status as a registered sex offender." But the GDC daily logs contain a note about Joseph attempting to put his niece on the phone with Charles—despite his terms of parole that prohibited him from having contact with minors without his parole agent's consent. Further, the district court

6

found that he failed to demonstrate an understanding, not that he lacked the understanding. Joseph never took the stand to testify about his understanding of Charles's parole or sex-offender status. Because Joseph presented no evidence to establish that he has the proper understanding, we conclude that the finding is not clearly erroneous.

Regarding finding 9, Joseph disputes that he "has not obtained the required background check to qualify for appointment as a guardian." He concedes that he failed to submit the required background check and still has not done so. But Joseph argues that he did not have to have it done by the time the decision was made. While it is true that Minnesota law permits the district court to appoint a guardian prior to receiving the background-check results, it is a matter within the district court's discretion. *See* Minn. Stat. § 524.5-118, subd. 1(d) (2014). Because the finding is factually accurate, it is not clearly erroneous.

Joseph argues that there is no reasonable evidence to support finding 10 that Charles wants a non-family member to be appointed as his guardian. Charles vacillated on what he wanted at times—specifically when he was on the phone with Joseph. But Charles told a program director at GDC that he wanted to have Symicek appointed. And Charles repeatedly told his case manager that he did not want his brother to be his guardian in case he had problems with his family. Because the record contains sufficient evidence in support of the finding, it is not clearly erroneous. *See Grant*, 259 Minn. at 424-25, 108 N.W.2d at 351.

With respect to finding 11, Symicek testified that he was trained and has served as a police officer. He also stated that he attends additional training sessions each year. The district court reasonably concluded based on Symicek's training and his work in the law-enforcement field that he would work appropriately with Charles's parole officer and abide by the terms and conditions of Charles's sex-offender registration. Finding 11 is not clearly erroneous.

The district court recognized that Joseph cares about his brother a great deal and has gone through a lot with him. But Joseph did not present evidence to refute the district court's interpretation of the phone calls between Joseph, Charles, and GDC representatives. And Joseph had not consented to the required background check by the time of trial nor indicated that he would do so.

The evidence established that Symicek is trained as a police officer. He has experience as a guardian for another individual at GDC. Symicek testified that he is willing to take on the responsibility and has had positive interactions with Charles. He also testified that Charles told him that he wanted Symicek, a non-family member, to be his guardian. Based on this record, we conclude that the district court acted within its discretion by appointing Symicek to be Charles's guardian.

## II.

Joseph argues the district court was biased in its decision. The issue of bias is waived if not properly presented to the district court. *Braith v. Fischer*, 632 N.W.2d 716, 724-25 (Minn. App. 2001) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)), *review denied* (Minn. Oct. 24, 2001). To determine if bias was properly presented to the

8

district court, we look for an objection made at trial or a motion for recusal. *See Gummow v. Gummow*, 375 N.W.2d 30, 34 (Minn. App. 1985). Neither occurred here.

Further, an error cannot be argued based on "mere assertion" unsupported by argument or authority. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-520, 187 N.W.2d 133, 135 (1971); *see also Gummow*, 375 N.W.2d at 34. Adverse rulings are an insufficient basis to prove judicial bias. *Olson v. Olson*, 392 N.W.2d 338, 341 (Minn. App. 1986).

Joseph did not raise this argument at the district court level. And there is no support in this record for any suggestion that the district court was biased. *Braith*, 632 N.W.2d at 724-25.

**Affirmed.**